# LEFKOWITZ, ATTORNEY GENERAL OF NEW YORK v. NEWSOME

No. 73-1627. Argued December 11, 1974—
Decided February 19, 1975

STEWART, J., delivered the opinion of the Court, in which DOUG-LAS, BRENNAN, MARSHALL, and BLACKMUN, JJ., joined. WHITE, J., *post*, p. 294, and POWELL, J., *post*, p. 302, filed dissenting opinions, in which BURGER, C. J., and REHNQUIST, J., joined.

*Robert S. Hammer*, Assistant Attorney General of New York, argued the cause for petitioner. With him on the brief were *Louis J. Lefkowitz*, Attorney General, *pro se*, *Samuel A. Hirshowitz*, First Assistant Attorney General, and *Irving Galt*, Assistant Attorney General.

*Stanley Neustadter* argued the cause for respondent. With him on the brief was *William E. Hellerstein.*

MR. JUSTICE STEWART delivered the opinion of the Court.

The respondent Leon Newsome was arrested pursuant to N. Y. Penal Law § 240.35 (6) for loitering in the lobby of a New York City Housing Authority apartment building. A search of Newsome conducted at the time of his arrest produced a small quantity of heroin and related narcotics paraphernalia. Consequently, in addition to the offense of loitering, he was also charged with possession of a dangerous drug, fourth degree, N. Y. Penal Law § 220.05 (now codified, as modified, as N. Y. Penal Law § 220.03), and criminally possessing a hypodermic instrument. N. Y. Penal Law § 220.45.

The New York City Criminal Court conducted a nonjury trial on the loitering charge and a hearing on Newsome's motion to suppress the evidence seized at the time of his arrest. Newsome argued that the arresting officer did not have probable cause for the loitering arrest, that there was insufficient evidence to support a loitering conviction, and that the loitering statute was unconstitutional and therefore could not serve as the basis for either a loitering conviction or a lawful search incident to arrest. The court rejected these arguments, found Newsome guilty of loitering, and denied the motion to suppress.

One month later, on the date scheduled for trial on the drug charges, Newsome withdrew his prior pleas of not guilty and pleaded guilty to the lesser charge of attempted possession of dangerous drugs. N. Y. Penal Law § 110. He was immediately sentenced to 90 days' imprisonment on the attempted-possession conviction and received an unconditional release on the loitering conviction.

At the sentencing proceeding Newsome indicated his intention to appeal both the loitering conviction and the denial of his motion to suppress the drugs and related paraphernalia seized at the time of his arrest. Appeal of the adverse decision on the motion to suppress was authorized by N. Y. Code Crim. Proc. § 813–c (now recodified as N. Y. Crim. Proc. Law §§ 710.20 (1), 710.70 (2)), which provided that an order denying a motion to suppress evidence alleged to have been obtained as a result of unlawful search and seizure "may be reviewed on appeal from a judgment of conviction notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty." [1]

On direct appeal to the Appellate Term of the New York Supreme Court, the loitering conviction was reversed for insufficient evidence and a defective information. Because the court held that there was probable cause to arrest Newsome for loitering, however, the search incident to that arrest was upheld and the drug conviction affirmed. Newsome sought further review of the drug conviction, but leave to appeal to the New York Court of Appeals was denied. This Court denied a petition for a writ of certiorari. *Newsome* v. *New York,* 405 U. S. 908.

Newsome then filed a petition for a writ of habeas corpus in the District Court for the Eastern District of

---

[1] Section 813–c was directed to the right to appeal an adverse ruling on a claim of an unlawful search and seizure after a plea of guilty. N. Y. Code Crim. Proc. § 813–g (recodified as N. Y. Crim. Proc. Law §§ 710.20.(3), 710.70 (2)), permitted similar appeals from denials of motions to suppress allegedly coerced confessions. See *McMann* v. *Richardson,* 397 U. S. 759, 766 n. 11. New York now also provides by statute for post-guilty plea appeals from denials of motions to suppress identification testimony claimed to be tainted by improper pretrial identifications. N. Y. Crim. Proc. Law §§ 710.20 (5), 710.70 (2).

New York. The petition reiterated the claim that the loitering statute was unconstitutional, that Newsome's arrest was therefore invalid, and that as a result the evidence seized incident to that arrest should have been suppressed. Prior to the District Court's decision on the merits of Newsome's petition,[2] the New York Court of Appeals declared New York's loitering statute unconstitutional. *People* v. *Berck*, 32 N. Y. 2d 567, 300 N. E. 2d 411. In light of the *Berck* decision, the District Court granted Newsome's application for a writ of habeas corpus.

The petitioner, the Attorney General of New York, who had been granted leave by the District Court to intervene as a respondent in the habeas corpus proceeding, appealed. The Court of Appeals for the Second Circuit affirmed the judgment of the District Court, *United States ex rel. Newsome* v. *Malcolm*, 492 F. 2d 1166, adhering to its earlier rulings that a New York defendant who has utilized state procedures to appeal the denial of a motion to suppress may pursue his constitutional claim on a federal habeas corpus petition although the conviction was based on a plea of guilty. *Id.,* at 1169–1171. The court held that New York's loitering statute violated due process because it failed to specify adequately the conduct it proscribed and failed to provide sufficiently clear guidance for police, prosecutors, and the courts so that they could enforce the statute in a manner consistent with the constitutional requirement that arrests be based on probable cause. *Id.,* at 1171–1174.

---

[2] The District Court initially dismissed the petition because Newsome, who had been released on bail pending final disposition of his case, was not "in custody" as required by 28 U. S. C. § 2241. Newsome appealed the dismissal, and, in light of this Court's holding on the custody question in *Hensley* v. *Municipal Court,* 411 U. S. 345, the Court of Appeals for the Second Circuit remanded the case to the District Court for a decision on the merits.

Accordingly, the court held that because Newsome was searched incident to an arrest for the violation of a statute found to be unconstitutional on the ground that it substituted mere suspicion for probable cause as the basis for arrest, the search of Newsome was also constitutionally invalid. The court concluded that the evidence seized should have been suppressed, and affirmed the District Court's judgment granting the writ of habeas corpus. *Id.*, at 1174–1175.

The Attorney General of New York sought review here of both the Court of Appeals' decision that Newsome had not waived his right to file a federal habeas corpus petition by pleading guilty and its decision as to the constitutionality of New York's loitering statute. Because of a conflict between the judgment in the present case and a decision of the Court of Appeals for the Ninth Circuit,[3] we granted certiorari limited to the question of a defendant's right to file a federal habeas corpus petition challenging the lawfulness of a search or the voluntariness of a confession or presenting other constitutional claims when a State provides for appellate review of those issues after a guilty plea. 417 U. S. 967.[4]

---

[3] California, like New York, permits a defendant to appeal specified adverse pretrial rulings even though he subsequently pleads guilty. Cal. Penal Code § 1538.5 (m). Unlike the Court of Appeals for the Second Circuit, however, the Court of Appeals for the Ninth Circuit by a divided vote held that such a defendant may not pursue his constitutional claim on a federal habeas corpus petition. *Mann* v. *Smith*, 488 F. 2d 245, 247.

[4] Certiorari was granted limited to Question 1 in Attorney General Lefkowitz' petition: "Does a state defendant's plea of guilty waive federal habeas corpus review of his conviction, even though under state law he has been permitted review in the state appellate courts of the denial of his motion, on constitutional grounds, to suppress the evidence that would have been offered against him had there been a trial?" 417 U. S. 967.

I

In contending that Newsome is precluded from raising his constitutional claims in this federal habeas corpus proceeding, the petitioner relies primarily on this Court's decisions in the guilty-plea trilogy of *Brady* v. *United States,* 397 U. S. 742, *McMann* v. *Richardson,* 397 U. S. 759, and *Parker* v. *North Carolina,* 397 U. S. 790, and on our decision in *Tollett* v. *Henderson,* 411 U. S. 258. The *Brady* trilogy announced the general rule that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings. This principle was reaffirmed in *Tollett* v. *Henderson, supra,* at 267: "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."

But the Court also suggested in the *Brady* trilogy that an exception to this general rule might be proper when a State decides to permit a defendant to appeal from an adverse ruling in a pretrial hearing despite the fact that his conviction is based on a guilty plea. See *McMann* v. *Richardson, supra,* at 766, and n. 11, 770 n. 13.[5] The justification for such an exception lies in the special

---

[5] Since the guilty pleas in *McMann* v. *Richardson* were entered prior to the effective date of New York's statutory scheme permitting a defendant pleading guilty to challenge on appeal the admissibility of evidence allegedly seized improperly or of an allegedly coerced confession, the Court in *McMann* expressly reserved ruling on the question presented by the judgment now before us. 397 U. S., at 770 n. 13. That express reservation unquestionably belies the argument advanced in the dissenting opinion of MR. JUSTICE WHITE, *post,* at 297–298, that the question before us was answered in *Parker* v. *North Carolina,* 397 U. S. 790, a case decided together with *McMann.*

nature of the guilty plea of a New York defendant like Newsome.

In most States a defendant must plead not guilty and go to trial to preserve the opportunity for state appellate review of his constitutional challenges to arrest, admissibility of various pieces of evidence, or the voluntariness of a confession. A defendant who chooses to plead guilty rather than go to trial in effect deliberately refuses to present his federal claims to the state court in the first instance. *McMann* v. *Richardson, supra,* at 768. Once the defendant chooses to bypass the orderly procedure for litigating his constitutional claims in order to take the benefits, if any, of a plea of guilty, the State acquires a legitimate expectation of finality in the conviction thereby obtained. Cf. *Fay* v. *Noia,* 372 U. S. 391, 438. It is in this sense, therefore, that ordinarily "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett* v. *Henderson, supra,* at 267.

New York, however, has chosen not to treat a guilty plea as such a "break in the chain of events" with regard to certain types of constitutional claims raised in pretrial proceedings. For a New York defendant whose basic defense consists of one of those constitutional claims and who has already lost a pretrial motion to suppress based on that claim, there is no practical difference in terms of appellate review between going to trial and pleading guilty. In neither event does the State assert any claim of finality because of the judgment of conviction. In either event under New York procedure the defendant has available the full range of state appellate review of his constitutional claims. As to those claims, therefore, there is no "break" at all in the usual state procedure for adjudicating constitutional issues. The guilty plea operates simply as a procedure by which the constitutional issues can be litigated without the necessity of

going through the time and effort of conducting a trial, the result of which is foreordained if the constitutional claim is invalid. The plea is entered with the clear understanding and expectation by the State, the defendant, and the courts that it will not foreclose judicial review of the merits of the alleged constitutional violations.[6]

In sum, although termed by the New York Criminal Procedure Law a "guilty plea," the same label given to the pleas entered by the defendants in the *Brady* trilogy of cases and *Tollett* v. *Henderson,* Newsome's plea had legal consequences quite different from the consequences of the pleas entered in traditional guilty-plea cases. Far from precluding review of independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of his "guilty plea," Newsome's plea carried with it the guarantee that judicial review of his constitutional claims would continue to be available to him. In this respect there is no meaningful difference between Newsome's conviction and a New York conviction entered after a trial.[7]

---

[6] The petitioner concedes that this review ultimately includes the certiorari or appellate jurisdiction of this Court. Indeed, in *Sibron* v. *New York,* 392 U. S. 40, we reversed a state-court conviction on the ground that the appellant's motion to suppress evidence should have been granted, notwithstanding the fact that the appellant had pleaded guilty and pursued his appeal under § 813-c. See *id.,* at 45 n. 2. If Newsome's guilty plea is not a sufficient "break in the chain of events [that] preceded it" to prevent review of his constitutional claims in this Court, then *a fortiori* the plea cannot rationally foreclose resort to federal habeas relief. For even when state procedural grounds are adequate to bar direct review of a conviction in this Court, federal habeas corpus relief is nonetheless available to litigate the defendant's constitutional claims unless there has been a deliberate bypass of the state procedures. See *Fay* v. *Noia,* 372 U. S. 391, 428-431.

[7] New York could easily have provided that, rather than pleading

Because of the entirely different expectations surrounding Newsome's plea and the completely different legal consequences flowing from it, earlier guilty-plea cases holding that "[t]he focus of federal habeas inquiry is the nature of the advice [of counsel] and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity," *Tollett* v. *Henderson, supra,* at 266, are simply inapposite. Newsome has satisfied all the prerequisites for invoking the habeas corpus jurisdiction of the federal courts.[8] He is no less entitled to federal review of his constitutional claim than is any other defendant who raises his claim in a timely fashion, in accordance with state procedure, and who pursues his

"guilty," a defendant who intends to appeal his pretrial claim of an involuntary confession or an unlawful seizure but has no desire to impose upon the State the burden of going to trial should plead "not guilty" and at the same time stipulate to all the evidence the State can introduce to prove his guilt. Upon the inevitable entry of a judgment of conviction based on the stipulation, the defendant would then be able to pursue his state appellate remedies. And, presumably, because there would then be no "solemn admission of guilt," all would concede that the defendant would not be foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding. But the only difference between such a procedure and the one New York has chosen is that the plea entered is labeled a plea of "not guilty" rather than "guilty" and there is a stipulation by the defendant as to the facts the State would prove demonstrating his guilt rather than a recitation by the defendant in court. The availability of federal habeas corpus depends upon functional reality, not upon an infatuation with labels. See *Fay* v. *Noia, supra.*

[8] Newsome is "in custody" within the meaning of 28 U. S. C. § 2241. See n. 2, *supra.* His petition for a writ of habeas corpus alleged that this custody was in violation of the laws of the United States. § 2241 (c)(3). And he has satisfied the exhaustion requirement of 28 U. S. C. § 2254 by presenting his federal claims to the state courts on direct appeal. See *Francisco* v. *Gathright,* 419 U. S. 59.

claim through all available levels of state appellate review.[9]

## II

Denying Newsome the right to file a federal habeas corpus petition raising his claim of an unconstitutional seizure would not only deprive him of a federal forum despite the fact that he has satisfied all the requirements for invoking federal habeas corpus jurisdiction, it would also frustrate the State's policy in providing for post-guilty plea appellate review of pretrial motions to suppress.

Many defendants recognize that they cannot prevail at trial unless they succeed in suppressing either evidence seized by the police or an allegedly involuntary confession. Such defendants in States with the generally prevailing rule of finality of guilty pleas will often insist on proceeding to trial for the sole purpose of preserving their claims of illegal seizures or involuntary confessions for potential vindication on direct appellate review or in collateral proceedings. Recognizing the completely unnecessary waste of time and energy consumed in such trials, New York has chosen to discourage them by creating a procedure which permits a defendant to

---

[9] In *Fay* v. *Noia, supra,* the Court held that a federal habeas judge may deny relief to an applicant who has deliberately bypassed the orderly state-court procedures for reviewing his constitutional claim. 372 U. S., at 438. But the Court also held that if the state courts have entertained the federal constitutional claims on the merits in a subsequent proceeding, notwithstanding the deliberate bypass, the federal courts have no discretion to deny the applicant habeas relief to which he is otherwise entitled. *Id.,* at 439. It would seem to follow necessarily that when there is no bypass of state appellate procedures, deliberate or otherwise, and the state courts entertained the federal claims on the merits, a federal habeas corpus court must also determine the merits of the applicant's claim.

obtain appellate review of certain pretrial constitutional claims without imposing on the State the burden of going to trial.

To deny federal habeas corpus relief to those in Newsome's position would make New York's law a trap for the unwary.[10] On the other hand, it is safe to predict that those New York defendants who knew that federal habeas corpus would be foreclosed would again be dissuaded from pleading guilty and instead would insist on a trial solely to preserve the right to an ultimate federal forum in which to litigate their constitutional claims. Such a result would eviscerate New York's commendable efforts to relieve the problem of congested criminal trial calendars in a manner that does not diminish the opportunity for the assertion of rights guaranteed by the Constitution.[11]

Accordingly, we hold that when state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding. The judgment of the Court of Appeals for the Second Circuit is affirmed.

*It is so ordered.*

---

[10] At the time Newsome pleaded guilty the Court of Appeals for the Second Circuit had repeatedly held that a New York defendant who has utilized § 813–c in the state courts may pursue his constitutional claim on a federal habeas corpus petition. *E. g., United States ex rel. Rogers* v. *Warden,* 381 F. 2d 209; *United States ex rel. Molloy* v. *Follette,* 391 F. 2d 231.

[11] The Uniform Rules of Criminal Procedure would create an even broader right of appeal than is currently provided for in New York, permitting post-guilty-plea appeal of any order denying a pretrial motion which, if granted, would be dispositive of the case. Uniform Rule Crim. Proc. 444 (d).

Mr. Justice White, with whom The Chief Justice and Mr. Justice Rehnquist join, dissenting.

Because I believe that *federal* law provides respondent Newsome no right to set aside his plea of guilty—a solemn, counseled admission in open court that he is in fact guilty—even assuming that he had previously been the victim of a search which did not measure up to federal standards, I respectfully dissent.

## I

The federal habeas corpus statute, pursuant to which Newsome sought to have the courts below set aside his plea of guilty, provides relief only if the petitioner can establish that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U. S. C. § 2254 (a). It is common ground, I take it, that the Federal Constitution does not itself entitle a defendant who has pleaded guilty to have that plea set aside upon a showing that he has previously been the victim of an unconstitutional search, even if he can also show that he pleaded guilty only because the prosecution planned to use the fruits of the search against him at trial.[1] *Blackledge* v. *Perry,* 417 U. S. 21 (1974); *Tollett* v. *Henderson,* 411 U. S. 258 (1973); *Brady* v. *United States,* 397 U. S. 742 (1970); *McMann* v. *Richardson,* 397 U. S.

---

[1] Indeed, not only does the United States Constitution grant no such entitlement, but the federal courts have for the most part refused to create such an entitlement in the exercise of their supervisory powers over the administration of criminal justice in the federal system. See *United States* v. *Sepe,* 474 F. 2d 784 (CA5), aff'd en banc, 486 F. 2d 1044 (1973); *United States* v. *Cox,* 464 F. 2d 937 (CA6 1972); *United States* v. *Mizell,* 488 F. 2d 97 (CA5 1973), and cases there cited. But see *United States* v. *Doyle,* 348 F. 2d 715, 719 (CA2), cert. denied, 382 U. S. 843 (1965).

759 (1970); *Parker* v. *North Carolina,* 397 U. S. 790 (1970). In *Tollett,* we said:

"We thus reaffirm the principle recognized in the *Brady* trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. *When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged,* he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann.*" 411 U. S., at 267. (Emphasis added.)

This "principle" is a rule of substantive constitutional law limiting the federal constitutional grounds upon which a defendant may attack a judicial admission of guilt. It is not, as the majority assumes, *ante,* at 289, a rule of procedure, disentitling a defendant to raise a Fourth Amendment claim which was not properly "preserved" under state law. If it were such a rule of procedure, both *McMann* and *Tollett* would have come out differently: both were federal habeas corpus proceedings; as the majority points out, *ante,* at 290 n. 6, federal issues are "preserved" for habeas corpus purposes unless state procedures for litigating them have been "deliberately bypassed"; and neither the petitioner in *McMann* nor the petitioner in *Tollett* had "deliberately bypassed" state procedures for raising the coerced-confession or grand-jury-discrimination claims there involved.[2] Indeed, the entire majority

---

[2] *McMann* was a case involving a coerced-confession claim in which the plea was entered before *Jackson* v. *Denno,* 378 U. S. 368 (1964), and therefore at a time when the defendant believed the jury would

opinion rests on the erroneous notion that we refused to hear antecedent constitutional claims in *McMann* and *Tollett* because the defendants had "bypassed" those claims by pleading guilty. In fact, those decisions were based on the substantive proposition that the defendants' guilt in those cases, and the State's consequent absolute right to incarcerate them, was established by their voluntary and intelligent pleas of guilty.[3]

The question raised in this case, therefore, is whether, if a State chooses to open its appellate courts to hear claims of constitutional deprivations preceding entry of a guilty plea and to set aside the plea if the antecedent violation is established, the State thereby creates a *fed-*

---

hear his confession regardless. *Tollett* involved a guilty plea entered in ignorance of the facts underlying the defendant's later attack on the grand jury.

[3] It is true that Fourth Amendment claims are never attacks on the accuracy of the finding of factual guilt, *Linkletter* v. *Walker*, 381 U. S. 618 (1965). Under our legal system, reversal of a conviction on Fourth Amendment grounds is perfectly consistent with a recognition that the defendant is, in fact, guilty. Thus, it may be argued that, unlike some other claims, Fourth Amendment claims are not undercut by a guilty plea in which guilt is solemnly admitted. The short answer to this argument is that it applies as well in the case of States which do *not* permit appeals from guilty pleas as in the case of those which do, and the argument has therefore already been rejected. *Tollett* v. *Henderson*, 411 U. S. 258 (1973); *Brady* v. *United States*, 397 U. S. 742 (1970); *McMann* v. *Richardson*, 397 U. S. 759 (1970); *Parker* v. *North Carolina*, 397 U. S. 790 (1970); *United States* v. *Sepe, supra.* More to the point, the deterrent purpose of the exclusionary rule should be furthered at the lowest possible cost to society in terms of freeing the guilty. By precluding defendants who plead guilty from litigating Fourth Amendment issues, we do not seriously detract from the deterrent purpose of the rule (a policeman about to improperly invade someone's privacy can hardly rely upon the erroneous pretrial denial of a suppression motion by a trial judge *and* the defendant's mistaken decision to plead guilty) and we avoid unnecessarily freeing the guilty.

*eral* constitutional right to set aside the guilty plea where none would have existed otherwise. The question almost answers itself. More importantly, however, it has already been answered by this Court in *Parker* v. *North Carolina, supra.*

In *Parker,* the defendant sought to set aside his guilty plea in a state habeas corpus proceeding alleging, *inter alia,* that a confession had been unconstitutionally coerced from him and that he pleaded guilty only because of the confession. The state trial court held a hearing on the merits of the coerced-confession claim and found both the confession and the subsequent plea to have been voluntary. On appeal, the North Carolina Court of Appeals clearly accepted the proposition that Parker's plea should be set aside if the confession was involuntary, and if it was the but-for cause of the plea. *Parker* v. *State,* 2 N. C. App. 27, 32, 162 S. E. 2d 526, 529. It concluded, however, that Parker's confession was voluntary and his plea not the product of it. On certiorari, we did not feel compelled—by the fact that North Carolina gave Parker a right to set aside his plea if it was based upon a confession coerced in violation of federal standards—to give him a similar right. Instead, assuming that the confession was inadmissible and that he pleaded guilty in the contrary belief, we held that Parker was not entitled "to disavow his admission in open court that he committed the offense with which he was charged." 397 U. S., at 797.[4] Like Newsome in New York, a defendant who loses a pretrial suppression motion in North Carolina and then pleads guilty may assume, by reading the North Carolina Court of Appeals opinion in *Parker* v.

---

[4] We did hold that a plea entered upon advice of counsel with regard to the admissibility of the confession, which advice was not "within the range of competence required of attorneys representing defendants in criminal cases," 397 U. S., at 797–798, would warrant vacation of the plea on Sixth Amendment grounds.

298

*State, supra,* that state appellate courts will hear the merits of his claim (in a state habeas corpus proceeding, if he can establish that his guilty plea was entered because the suppression motion was denied). However, our decision in *Parker* would preclude any claim that this Court or any federal court would do likewise. Similarly, here, Newsome's guilt has been established by as reliable a method as is known to the criminal law—his solemn admission of guilt, made in open court. The Federal Constitution entitles him to set aside that plea only upon a showing that it was involuntary or unintelligent. The fact that New York State has nonetheless chosen to set aside his conviction upon a showing that he was the victim of a previous illegal seizure does not and cannot alter substantive federal constitutional law.[5]

II

The majority contends, however, that since state law provides a defendant with a "guarantee" that he may plead guilty and still litigate his Fourth Amendment claim, it cannot possibly be said that he has chosen to bypass that claim by pleading guilty. Moreover, the majority asserts that the New York guilty plea involved here is a "guilty plea" in name only, and is something else in reality in light of the "different expectations" surrounding it and the different "legal consequences" flowing from it. There are two things wrong with these contentions.

---

[5] *Sibron* v. *New York,* 392 U. S. 40 (1968), in which we heard a Fourth Amendment claim on direct appeal after a guilty plea, was decided before the Court created the relevant constitutional rule in the *Brady* trilogy; and in *Sibron* the Court never addressed the question whether the Federal Constitution entitled the defendant to set aside his guilty plea upon establishing the antecedent Fourth Amendment violation.

First, the contentions assume that the *Brady* trilogy was based upon notions of waiver. In other words, it assumes that this Court has in the past refused to set aside "guilty pleas" on the basis of antecedent violations of constitutional rights only because the plea was deemed to have "waived" those rights. This assumption finds some support in the language of those cases, but waiver was not their basic ingredient. In any event, the Court squarely and conclusively rejected the waiver rationale in *Tollett* v. *Henderson, supra.* We said there:

> "If the issue were to be cast solely in terms of 'waiver,' the Court of Appeals was undoubtedly correct in concluding that there had been no such waiver here." 411 U. S., at 266.

Nonetheless, the Court of Appeals' decision in *Tollett* was reversed. Under *Tollett*'s interpretation of the trilogy, and under *Tollett* itself, federal constitutional principles simply preclude the setting aside of a state conviction by a federal court where the defendant's guilt has been conclusively established by a voluntary and intelligent plea of guilty. Labels aside, a guilty plea for federal purposes is a judicial admission of guilt conclusively establishing a defendant's factual guilt. Newsome's plea plainly qualifies.[6]

---

[6] The majority argues that Newsome would have had a right to set aside his conviction on the basis of a Fourth Amendment claim if he had pleaded not guilty and permitted his attorney to stipulate that, if called, certain government witnesses would testify to certain facts, and introduce certain exhibits, among them the allegedly illegally seized evidence; and that, therefore, he should be permitted to set aside his functionally equivalent plea of guilty on the basis of the same Fourth Amendment claim. The premise is correct; the conclusion is not. In the first place, if the conclusion were correct, it should apply equally to States which do not permit appeals from guilty pleas. As our decisions in the *Brady* trilogy and *Tollett* establish, however, guilty pleas in those States are not infirm on

Second, the contentions assume that New York State intended to create the expectation and has the power to create the expectation on the part of defendants who plead guilty that they will be able to litigate their antecedent Fourth Amendment claims not only in state courts, but also in federal courts. There is absolutely no reason to suppose that New York intended to create such expectations and, if it had so intended, it would have been acting plainly beyond its power. New York State may, of course, give its defendants as a matter of state law the right to set aside guilty pleas on the basis of antecedent violations of federal constitutional search standards. If they do, it cannot be said that a defendant who pleads guilty has "waived" that state-law right. But, it is for Congress or this Court to decide whether *federal* law gives a defendant the right to set aside his plea under such circumstances. The "legal circumstances" in federal courts which will flow from a state plea, and the "expectations" which a defendant should have about what will occur in federal courts following the plea are not matters to be decided by the New York

the basis of antecedent constitutional violations, even though convictions in uncontested trials are. The majority offers no reason why this distinction should be ignored for federal purposes just because New York ignores it for state purposes. Moreover, a conviction based upon the defendant's solemn admission of factual guilt is *not* the functional equivalent of a conviction on uncontested evidence. In the latter case, the conviction is not based on the defendant's admission but on the evidence: the trial judge may always acquit, if unpersuaded, and an appellate court may find the illegally seized evidence not to have contributed to the verdict. See discussion of the differences for appeal purposes between a plea of guilty and a stipulation to evidence in *United States* v. *Mizell*, 488 F. 2d, at 99–101 (guilty plea not appealable), and *United States* v. *Mendoza*, 491 F. 2d 534, 536–538 (CA5 1974) (conviction on stipulated evidence appealable). See also *United States* v. *Cox*, 464 F. 2d, at 944–945.

Legislature and surely not finally by the Court of Appeals for the Second Circuit. If this Court had followed its prior decisions and reiterated in the present context that Newsome may not litigate his Fourth Amendment claim in federal court, then once those who counsel defendants in the New York court system read the opinion, it would be incontestable that a guilty plea in New York would foreclose federal habeas corpus relief based on already rejected Fourth Amendment claims and that no defendant might legitimately harbor "expectations" to the contrary.[7]

Thus, even under a waiver theory, counseled defendants waive all rights by pleading guilty, which the applicable law says they waive; and, since the applicable law in this case is federal, it is for us, and not the New York State Legislature, to say whether Fourth Amendment claims such as those involved here will or will not be waived by a guilty plea. To illustrate, suppose instead of passing the statute involved here New York had sought to achieve substantially the same result by permitting *pretrial* appeals from denials of suppression motions in all cases in which the trial judge certified that the seized evidence was likely to be determinative of the outcome of the trial. Suppose further that a defendant avails himself of this opportunity, loses on the merits of his Fourth Amendment claim in the highest state court, and subsequently pleads guilty. Suppose, finally, the

---

[7] Because of the possibility that prior Second Circuit law, *e. g.*, *United States ex rel. Rogers* v. *Warden*, 381 F. 2d 209 (1967), and *United States ex rel. Molloy* v. *Follette*, 391 F. 2d 231 (1968), affirmatively misled respondent's lawyer into believing that federal law does permit collateral relitigation of the antecedent Fourth Amendment violation after a New York guilty plea, the best course would have been to permit all those, including Newsome, who pleaded guilty *before* the date of this decision in reliance on Second Circuit law to replead. *United States* v. *Mizell, supra,* at 101. Cf. *Santobello* v. *New York,* 404 U. S. 257 (1971).

State passed a second statute permitting a defendant who pleads guilty under the circumstances just described to appeal his conviction directly to this Court or to bring directly a federal habeas corpus proceeding attacking the constitutionality of the search—the statute expressly stating that the Fourth Amendment right is deemed *not* waived by the plea of guilty. The second statute would, obviously, be of no effect whatever, since it would be a plain effort by the State to legislate federal law. However, so far as the federal courts are concerned, the hypothesized statute is the functional equivalent of the statute at issue in this case as construed and effectuated by the majority. The only difference is that, in the case of the real statute, the state appeals follow the plea rather than precede it.

Finally, the majority argues that a contrary decision by this Court would interfere with the State's policy of avoiding unnecessary trials by permitting appeals from guilty pleas. New York, whose policy this Court is seeking to further, has appeared here through its Attorney General and argued precisely to the contrary. Obviously, New York believes that its policy is adequately served by the state appeals. There is no reason for the Court to decide the case one way for New York's benefit, when New York is arguing strenuously that we should decide the case the other way.

Mr. Justice Powell, with whom The Chief Justice and Mr. Justice Rehnquist join, dissenting.

I would reverse the judgment of the Court of Appeals for the reasons set forth in my concurring opinion in *Schneckloth* v. *Bustamonte,* 412 U. S. 218, 250 (1973). This case is even more inappropriate for federal collateral review of a state prisoner's Fourth Amendment claim. The prisoner here, with advice of counsel,

pleaded guilty in open court. He does not question the voluntariness of his plea nor does he assert innocence. Rather, he argues that his conviction is reviewable in federal habeas corpus because of an uncommon New York statute which allows appeal from an adverse suppression ruling notwithstanding the guilty plea.

Yet the Court today holds that respondent is entitled to seek *federal* habeas corpus relief. This ruling distorts beyond recognition the writ of habeas corpus. The historic and honored purpose of habeas corpus, and indeed its only justification, is to provide the added assurance to a free society that no innocent person will suffer an unconstitutional deprivation of liberty. The great writ was not designed as a means for freeing persons who have voluntarily confessed guilt under procedures comporting with due process of law.

Apart from my views as to the inappropriateness of federal habeas corpus review of Fourth Amendment claims duly adjudicated by state courts, *Bustamonte, supra,* I also agree with MR. JUSTICE WHITE's dissent, *ante,* p. 294. As *federal* law is invoked by respondent, his guilty plea is determinative under *Tollett* v. *Henderson,* 411 U. S. 258 (1973).