541 F.2d 402
 UNITED STATES of America ex rel. Solomon HARDING
v.
Ronald MARKS, Superintendent, District Attorney, Phila. Court.
Appeal of the COMMONWEALTH OF PENNSYLVANIA.
 No. 76-1053.
 United States Court of Appeals,
Third Circuit.
 Argued June 22, 1976.
Decided Aug. 27, 1976.
 
 John H. Lewis, Jr., Philadelphia, Pa., for Solomon Harding; Morgan, Lewis & Bockius, Philadelphia, Pa., of counsel.
 Bonnie Brigance Leadbetter, Asst. Dist. Atty., Steven Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Abraham J. Gafni, Deputy Dist. Atty., F. Emmett Fitzpatrick, Dist. Atty., Philadelphia, Pa., for appellant.
 Before ADAMS, HUNTER and WEIS, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 A rape victim's statement that her assailant wore a blue knit cap was countered by the accused's testimony that he never wore hats. The ease with which a person may don a cap led the state trial judge to disparage that phase of the defense in terms which the federal district court thought so prejudicial as to require habeas corpus relief. After our own review of the complete trial record, we disagree with the district court and vacate its order.
 
 
 2
 Petitioner was convicted in the Philadelphia Court of Common Pleas of a savage rape which occurred after dark on the evening of March 8, 1969. The details of the occurrence were not seriously disputed and the critical issue in the case was one of identification.[1]
 
 
 3
 At the trial, the victim testified that she had been walking along the sidewalk of a lighted street when the defendant and his companion, walking in the opposite direction, touched her as they passed. She turned, looked back over her shoulder at them, and continued on her way. Several moments later, the two men approached from behind and seized her. They then dragged her into a dark alley and later onto a nearby porch where they repeatedly raped her. During the course of the events, she was able to see their faces and, at a later date, she positively identified the defendant. She also noted that he had worn a dark blue knit hat.
 
 
 4
 As the attack continued, a passerby named Carroll came upon the scene. He scuffled with the defendant who fell over the porch railing and onto the ground, a distance of about five feet, as photographs of the scene show. Carroll then heard the defendant cry that his leg was broken. Although at the trial he was able to describe the assailant as being similar in height, weight, complexion and age to the defendant, Carroll could not be certain in his identification during the courtroom confrontation. He too recalled that the assailant had worn a blue knit cap.
 
 
 5
 On March 21, 1969, two weeks after the rape, the police arrested the defendant at his home. The officers at trial testified that, at the time of the arrest, defendant was limping and one ankle was swollen so severely that he could not lace the shoe on that foot. A photograph taken on the night of the arrest confirms this fact. One of the officers asked defendant about the condition of his leg and he replied that he did not know how he had received his injury because he had been drunk at the time.
 
 
 6
 The defendant testified that he did not know which pair of shoes he had worn on the night of his arrest and denied either having injured his foot or having had any conversation with the police about it. In addition, defendant, his wife and his mother each testified briefly that he did not wear hats. In response to a question defendant said that he "never wore a hat, never in my life."
 
 
 7
 During the course of his lengthy instructions to the jury, the trial judge said:
 
 
 8
 "Now, members of the jury, there was testimony that the defendant never wears a hat, or may, or may never wear a hat except when he is going out to rob a bank, or never wears a hat unless he is going ice skating, or never wears a hat unless he is going out to commit some crime, or whatever. So what significance that has, I don't know. You must say."[2]
 
 
 9
 At the conclusion of the charge, the court invited counsel to submit requests for additions or corrections, but the defense lawyer submitted neither exceptions nor requests for modification.[3]
 
 
 10
 After the jury returned its verdict of guilty, counsel for defendant filed motions for a new trial and in arrest of judgment on the ground that the verdict was against the evidence and the law, but no complaint about the charge was registered. When arguments on the motions were scheduled, the defendant requested permission to personally review the trial notes and the court granted a continuance of three weeks for that purpose. At the rescheduled hearing, counsel for defendant said, "I went over the notes again. I still cannot find any reason to argue the motion for a new trial."
 
 
 11
 The defendant addressed the court, stating that he had gone through the notes, along with a few of his friends at the prison who were acquainted with the law, and he still wondered why he had been picked out. On this point, the Assistant District Attorney revealed that defendant had been implicated in the rape by his companion who was in custody of the police on another matter. Once again, after having ample opportunity, neither the defendant nor his lawyer commented about the court's instructions to the jury.
 
 
 12
 After the imposition of sentence, an appeal was taken to the Pennsylvania Superior Court. A different member of the Public Defender's staff examined the record, prepared the brief, and assigned as error the challenged comments to the jury. The Superior Court affirmed the conviction without an opinion, and the Supreme Court of Pennsylvania denied allocatur.
 
 
 13
 Defendant then filed his habeas corpus petition in the district court, alleging prejudicial comments in the trial court's instructions to the jury. The district court appointed counsel and held a hearing at which time the parties stipulated that the defendant had not participated in his lawyer's decision not to except to the charge. The court found that there had been no waiver or bypass of state remedies, and that the remarks of the trial judge during the charge were so prejudicial as to deny the defendant a fair trial. Accordingly, the writ was granted.
 
 
 14
 It is a cardinal rule that a charge must be viewed as a whole. A single questionable comment ripped from its context may not, alone, be accepted as reversible error. The impact of the charge on the jury must be considered within the framework of the entire trial in determining whether an instruction is so prejudicial as to violate due process. Petitioner challenges but one of the many instructions but glosses over the fact that the trial included other important components as well. In weighing the possible prejudicial effect of a single statement by a trial judge, the reviewing court must examine the complete trial without overlooking equally important matters such as the testimony of witnesses, the introduction of exhibits, and the arguments of counsel. In considering a challenge to a trial judge's charge in a habeas corpus setting, the Supreme Court phrased the test to be "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).
 
 
 15
 We agree with the district judge that the challenged comment was improper. Indeed, it would furnish strong argument for reversal were this a trial in a federal court in our circuit. But our function in a habeas corpus proceeding arising out of a state criminal trial is limited:
 
 
 16
 "Before a federal court may overturn a conviction resulting from a state trial in which this instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. at 146, 94 S.Ct. at 400.
 
 
 17
 Donnelly v. DeChristoforo, 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974), although factually distinguishable, describes the role of a reviewing court in passing upon allegations of improper prosecutorial argument:
 
 
 18
 "(A) court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations."
 
 
 19
 It is apparent that the remarks of the trial judge were an unfortunate attempt at humor, reflecting the view that the defendant's alleged practice of not wearing a hat was entitled to little weight in the circumstances of the case. Nevertheless, the jury was told straightforwardly that they were to determine the facts and do so in a calm and dispassionate manner. The fact that neither the defendant nor his lawyer made an objection at the trial or at the argument for a new trial is a strong indication that the comment had little, if any, impact on those in the courtroom.
 
 
 20
 The district judge also cited two other instances of what he considered the trial judge's unfair characterization of Carroll's testimony and of the defendant's account of a conversation with the victim some time after the crime. In our view those statements of the trial judge were neither misleading nor unfair. In the charge he appropriately cautioned the jury on identification testimony and before beginning his review of the evidence, repeated his admonition that, if there was a conflict between his recollection and that of the jurors, theirs would control. There was no misstatement of a constitutional principle, see Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); Cool v. United States, 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972), and when read as a whole, the charge fairly presented the issues to the jury.
 
 
 21
 We have painstakingly reviewed the entire trial transcript with a particular recognition of the hazard of error in identification by eyewitnesses under conditions of stress. We cannot accept the district court's view that the challenged comment of the judge so permeated the trial process as to render the proceeding constitutionally unfair to the defendant. The Commonwealth's case was a strong one. It is implausible that the questionable remark of the trial judge affected the outcome.
 
 
 22
 Having concluded that the comment did not constitute a due process violation, we need not reach the district court's determination that there was no bypass or waiver by failure to object or request an ameliorating instruction following the charge.[4]
 
 
 23
 The order of the district court will be vacated.
 
 JAMES HUNTER, III, Circuit Judge (dissenting):
 
 24
 I respectfully dissent. While trial counsel's decision not to object to the charge at the trial level was within his implied authority and was binding on petitioner, without regard to Harding's participation in that decision,[1] Harding did not deliberately bypass orderly state procedures. In addition, in my view the trial court's instruction denied petitioner his fourteenth amendment right to a fair and impartial trial. Accordingly, I would affirm.
 
 
 25
 Recently, in Lefkowitz v. Newsome, 420 U.S. 283, 292 n. 9, 95 S.Ct. 886, 891, 43 L.Ed.2d 196 (1975), the Supreme Court stated:
 
 
 26
 In Fay v. Noia, supra, the Court held that a federal habeas judge may deny relief to an applicant who has deliberately bypassed the orderly state court procedures for reviewing his constitutional claim. 372 U.S., at 438 (83 S.Ct. (822), 848). But the Court also held that if the state courts have entertained the federal constitutional claims on the merits in a subsequent proceeding, notwithstanding the deliberate bypass, the federal courts have no discretion to deny the applicant habeas relief to which he is otherwise entitled. Id., at 439 (83 S.Ct. 822) (emphasis added).[2]
 
 
 27
 Here, at the time of petitioner's trial and appeals the policy of the Pennsylvania courts was to entertain claims of defects in the charge, notwithstanding a failure to object at trial where the error was "basic and fundamental . . . as in view of the entire record required (the conclusion) that one accused of crime has been deprived of a fair and impartial trial." Commonwealth v. Jennings, 442 Pa. 18, 26, 274 A.2d 767, 771 (1971). Thus, under Pennsylvania procedure, Harding had two avenues available for review of his claim of defect in the charge: he could object at the trial level and preserve any alleged error for appeal or he could not object at the trial level and still obtain review of the alleged defect if the Pennsylvania appellate courts found the error to be "fundamental."[3] Harding pursued the latter course and his conviction was affirmed, without opinion, by the Pennsylvania Superior Court. Allocatur was denied by the Pennsylvania Supreme Court. If we assume, as does the Commonwealth, that the Pennsylvania appellate courts decided that the claimed error in the charge did not fall within the exception to the immediate objection rule, that decision would necessarily have required consideration of the merits of Harding's claim. Because the state appellate courts would and did entertain the merits of petitioner's claim of error in the charge, despite his failure to object at the trial level, we must do likewise. Lefkowitz v. Newsome, supra. To hold otherwise would permit a state court to consider the merits of a petitioner's constitutional claim, reject his contention of constitutional error but phrase that rejection in terms of a failure to meet the state's procedural exception and thereby deny habeas corpus review of claimed constitutional error. Such a course would result in an unwarranted restriction on the availability of the Great Writ. See Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1973).
 
 
 28
 The majority states that a review of the complete record and the charge as a whole shows no error of constitutional dimension. I disagree and in large part rely on the district court's fine opinion. 403 F.Supp. 946 (E.D.Pa.1975). I am most concerned with one portion of the court's charge. Identification was the key issue in this case and Harding's proclivity not to wear hats was vital to that issue. The court's comment on Harding's defense was as follows:
 
 
 29
 Now members of the jury, there was testimony that the defendant never wears a hat, or may, or may never wear a hat except when he is going out to rob a bank or never wears a hat unless he is going ice skating, or never wears a hat unless he is going out to commit some crime, or whatever, so what significance that has, I don't know you must say.
 
 
 30
 App. at 81a. (emphasis added). There was no evidence whatsoever that petitioner had ever been convicted of a crime, let alone that he was a bank robber. Although the "process of constitutional line drawing in this regard is necessarily imprecise,"[4] and although I am concerned with the heinous nature of the crime charged, I consider this statement not merely an "unfortunate attempt at humor," but rather a comment so fundamentally prejudicial as to have deprived Harding of a fair trial. Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), relied on by the majority, is distinguishable. In Donnelly the court specifically directed the jury's attention to a remark of the prosecutor and "declared it to be unsupported, and admonished the jury to ignore it." Id. at 644, 94 S.Ct. at 1872. I cannot conclude that the court's several isolated statements that the jury was to decide the facts for itself vitiated this highly prejudicial comment by the trial judge about such a key aspect of this case.
 
 
 
 [1]
 The defense was conducted by a member of the Philadelphia Public Defender's office
 
 
 [2]
 Following these comments, the judge continued:
 "Members of the jury, it is for you to say, and for you alone to say. You must do it intelligently. What are the facts? What happened? Just what are the facts, no more than that.
 "It is not for you to pity. It is not for you to be sorry for (the victim) or the defendant, or to wish that it didn't happen, or to suppose that if it did, there was a reason for it.
 "Good, bad, blessed, or cursed, it is not for you to say. You are not to say to yourself: 'What will the penalties be?' That is not your duty to be sorry, to pity, to hate, to revenge, to love, whatever.
 "Just what are the facts? . . . ."
 
 
 [3]
 The record indicates the following took place:
 "THE COURT: I(t) cannot be but that there is something that I did not say, that I should have, or I should not have said that I did. If you will excuse us for a moment (to the jury), please, I will consult with counsel upon that question.
 ______COU
 (Discussion in chambers as follows.)
 ______sio
 "THE COURT: Anything else, gentlemen?
 "(PROSECUTOR): No, sir.
 "(DEFENSE COUNSEL): No, sir.
 ______ENS
 (Conclusion of discussion in chambers.)
 ______sio
 (Open court.)
 ______our
 "THE COURT: There being nothing further, the jurors may retire."
 
 
 [4]
 In its opinion, the district court relied upon the waiver standard set out in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Those precedents were substantially limited by Estelle v. Williams, --- U.S. ----, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), decided while this appeal was pending. The picture here is clouded by the former Pennsylvania practice of permitting appellate review of "basic and fundamental" error in a charge to which objection need not be made, see Commonwealth v. Williams, 432 Pa. 557, 248 A.2d 301 (1968). That doctrine was abrogated after petitioner's case had been decided by the Pennsylvania courts. See Commonwealth v. Clair, 458 Pa. 418, 326 A.2d 272 (1974). See also Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); United States ex rel. Green v. Rundle, 452 F.2d 232, 237 (3d Cir. 1971); Gibbons, Waiver: The Quest for Functional Limitations on Habeas Corpus Jurisdiction, 2 Seton Hall L.Rev. 291 (1971)
 
 
 [1]
 See Henry v. Mississippi, 379 U.S. 443, 451, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); United States ex rel. Green v. Rundle, 452 F.2d 232, 237 (3d Cir. 1971)
 
 
 [2]
 The Supreme Court has recently reaffirmed the principle that a federal habeas judge may not deny habeas relief on deliberate bypass grounds where the state courts would, despite the bypass, entertain the merits. Francis v. Henderson, --- U.S. ----, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976)
 
 
 [3]
 Whatever the scope of this exception to the immediate objection rule, it is at least clear that it encompasses a denial of due process under the fourteenth amendment. See Commonwealth v. Williams, 432 Pa. 557, 564, 248 A.2d 301, 304 (1968)
 
 
 [4]
 Donnelly v. DeChristoforo, 416 U.S. 637, 645, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)