**Rodney T. BOYD, Appellant,**

v.

**Ira MINTZ, Superintendent of The New Jersey Adult Diagnostic & Treatment Center, and The State of New Jersey.**

No. 79–2663.

United States Court of Appeals, Third Circuit.

Argued May 23, 1980.

Decided Sept. 29, 1980.

Stanley C. Van Ness, Public Defender, Stanford M. Singer (argued), Asst. Deputy Public Defender, Abrams, Lerner, Kisseloff & Kissin, East Orange, N. J., for appellant.

John J. Degnan, Atty. Gen. of N. J., Trenton, N. J., Simon Louis Rosenbach (argued), Deputy Atty. Gen., Division of Crim. Justice, Appellate Section, Princeton, N. J., for appellees.

Before ADAMS, VAN DUSEN and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This is an appeal from the denial of a petition for a writ of habeas corpus. The sole question presented is whether the appellant was provided with an opportunity for a full and fair litigation of his fourth amendment claim in the state courts, thereby precluding federal collateral relief. We hold that because there was a complete breakdown in the state procedure he was not provided with an opportunity for a full and fair litigation of his fourth amendment claim and therefore will reverse the judgment of the district court.

### I.

Rodney T. Boyd was charged in Monmouth County, New Jersey with rape, assault with intent to rape, assault with an offensive weapon, and unlawful possession of a weapon. On August 23, 1976, he was arraigned on the indictment before the Hon. Patrick J. McGann, Jr., Judge of the New Jersey Superior Court, and was represented by the Office of the Public Defender of New Jersey, Monmouth County Region for the purposes of arraignment only. Judge McGann informed Boyd that he would be provided with a form to apply for formal representation by the Public Defender. Following arraignment, Boyd was held in the Monmouth County Jail.

On September 17, Boyd was interviewed by an investigator of the Public Defender's Office. On September 21, 1976, the form completed by Boyd and entitled "Declaration of Indigency and Application for Representation" ("Form 5A") was received by the Public Defender. Following the requisite indigency investigation, Boyd was accepted as a Public Defender client and was interviewed extensively on October 5, 1976.

At that time, he described an allegedly warrantless search of his home during which the police had seized certain items of clothing allegedly worn by the complaining witness, the rope with which she allegedly had been tied, a .38 caliber pistol, and a knife. He also stated that the complaining witness had since left the jurisdiction and would not be available to testify for the State at trial.

On October 6, the Public Defender filed a motion on behalf of Boyd to suppress. New Jersey Court Rule 3:5–7(a) required motions to suppress to be made within thirty days after the defendant pleads to the indictment. The motion to suppress was denied with prejudice and without evidentiary hearing or inquiry into the merits because the motion, which had been filed fourteen days late, was not accompanied by a formal application to enlarge the time within which the motion could be brought. Sometime after January 1, 1976, the Assignment Judge of Monmouth County had instituted a policy of requiring formal applications for extensions. Prior to that time, a motion to enlarge the time was argued on the return date of the motion to suppress.

On December 7, Boyd pleaded guilty to the rape charge. The plea was entered in accordance with a plea bargain under which the State agreed to move the dismissal of the remaining counts of the indictment, and of an additional outstanding indictment, and to recommend an indeterminate commitment in the New Jersey Adult Diagnostic and Treatment Center, not to exceed ten years. On February 18, 1977, Boyd was so sentenced. However, due to problems concerning his assignment to the Center,[1] it was necessary to renegotiate the plea. Therefore, on February 25, Boyd withdrew his plea of guilty of rape and pleaded guilty to assault with intent to rape. The other charges were dropped and Boyd was convicted and sentenced to an indeterminate commitment at the Center.

---

1. The Adult Diagnostic and Treatment Center had reported to the court that it could not accept custody of Boyd as sentenced because sex offender commitments were required by law to set forth a maximum not less than that provided by statute for the offense. A compromise was reached at the hearing of February 25, 1977, under which the conviction of rape was vacated and dismissed, and Boyd pleaded guilty to the offense carrying the statutory maximum most closely approximating the bargained for sentence, i. e., assault with intent to rape, carrying a statutory maximum of 12 years' imprisonment.

On appeal, the Superior Court, Appellate Division affirmed the dismissal of the motion to suppress.[2] A petition for certification was denied by the Supreme Court of New Jersey on December 19, 1978. Boyd then filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Following an evidentiary hearing, the petition was denied. This appeal followed.[3]

## II.

Under *Stone v. Powell*, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976), we may not consider fourth amendment challenges in the habeas corpus setting "where the State has provided an opportunity for full and fair litigation" of the fourth amendment claim. This case requires us to give meaning in this factual context to the Supreme Court's phrase "an opportunity for full and fair litigation." The appellant argues that no opportunity effectively was provided him. An explanation of the district court's approach is helpful to an understanding of this case.

The district court, relying on *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), concluded that Boyd's failure to file his motion to suppress within the thirty day limitation of New Jersey Court Rule 3:5–7(a) did not "counsel against" habeas review. In *Sykes*, a state prisoner sought habeas relief on the ground that he had not understood the *Miranda* rights before making a statement. The Supreme Court held that the alleged deprivation of a federal constitutional right in state proceedings on independent state procedural grounds might not bar federal habeas review where the petitioner shows "cause" for the procedural default and "prejudice" from the abrogation of the federally–guaranteed right. The district court in this case, applying the rule in *Sykes*, concluded:

> Counsel has explained to this Court's satisfaction why, with slightly more than one business day from petitioner's application to the running of the thirty day time limit of R. 3:5–7(a), they were unable to file a timely motion. Furthermore, I cannot believe that Judge Lane's new policy on applications to enlarge was so firmly entrenched as the State claims. In sum, counsel had adequate cause for late filing, and also for failure to properly move to extend the period. There was a genuine question whether the victim would have been available to testify at trial. If she were not, admission of the evidence seized in the warrantless search would certainly be prejudicial under even the most stringent standard. *See Collins v. Auger*, 577 F.2d 1107, 1110–1111 (8th Cir. 1978), [*cert. denied*, 439 U.S. 1133, 99 S.Ct. 1057, 59 L.Ed.2d 96 (1979)]. Even if the witness were available, the value of the items seized for corroboration or impeachment purposes clearly rises to the necessary level of prejudice. *See Sallie v. North Carolina*, 587 F.2d 636, 639 (4th Cir. 1978). Thus, *Wainwright* is no bar to consideration of this petition.

*Boyd v. Mintz*, Civ. No. 79–1258 (D.N.J. July 27, 1979) at 3–4, *reprinted in* App., at 38a–39a.[4]

---

2. Under New Jersey Court Rule 3:5–7(d), a state appellate court may review a denial of a motion to suppress evidence obtained in an allegedly unlawful search and seizure even though the defendant pled guilty.

3. The fact that Boyd pled guilty does not preclude our review of his claims because of the existence of New Jersey Court Rule 3:5–7(d). *See Lefkowitz v. Newsome*, 420 U.S. 283, 293, 95 S.Ct. 886, 891, 43 L.Ed.2d 196 (1975) (holding that "when state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursuing these constitutional claims in a federal habeas corpus proceeding.")

4. According to the district court, the fact that the Public Defender's office had no system to deal with the 30–day rule also suggested that the New Jersey court had not made clear the rule would be strictly enforced. The district court stated:

> I find it incredible, however, that a responsible agency such as the PD [Public Defenders Office] would not have been acutely aware of the practice, and would have formulated an appropriate institutional routine to cope with the stricter requirements, were that policy in fact firmly implanted in Monmouth County in September–October 1976.

App., at 37a.

The court nevertheless denied relief because it believed that *Stone v. Powell* precluded consideration of the fourth amendment claim. It held that the state provided Boyd an opportunity to challenge evidence on fourth amendment grounds via N.J.Ct.R. 3:5–7(a), the contemporaneous objection rule which requires that motions to suppress be made within thirty days after the defendant pleads to the indictment.

We turn then to the issues presented here. Boyd argues that "*Stone v. Powell* simply cannot be construed to mean that 'opportunity' requires only the bare provision for procedures by which one can litigate a fourth amendment claim." Brief of Appellant at 10. Rather, he argues, *Stone v. Powell* requires actual litigation in state court of the constitutional claim. Courts that have considered this question have all rejected Boyd's argument.

In *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978), *Stone v. Powell* was construed to preclude federal habeas corpus relief for fourth amendment claims whether or not the defendant avails himself of that opportunity. The court bottomed its holding on *Stone*'s premise that "federal habeas corpus relief based on the application of the exclusionary rule, when the state courts had already afforded the opportunity for full and fair litigation of the issue, would make a minimal contribution to the effectuation of fourth amendment rights compared to the substantial societal costs associated with exclusion of otherwise probative evidence." *Id.* at 1192. The court then stated:

> If police officers who are conducting a search or making an arrest are aware that the state criminal justice system provides an opportunity for full and fair litigation of fourth amendment suppression claims, the policy underlying the exclusionary rule will be served. That a defendant later at trial might choose not to assert his fourth amendment claim

could not remove the system's deterrence to police misconduct.

*Id.* at 1192–93.

Likewise, in *Gates v. Henderson*, 568 F.2d 830 (2d Cir. 1977) (in banc), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978), the court held that *Stone* only requires that the state provide the opportunity irrespective of whether the defendant avails himself of it. The court noted, however, that "where the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process, [federal habeas relief] may still be warranted." *Id.* at 840.

We believe such a breakdown occurred in this case. Thus, even assuming, without deciding, that "opportunity" simply means providing procedures by which one can litigate a fourth amendment claim, no opportunity effectively was provided Boyd in this case. From the time of his plea to the indictment on August 23, 1976 until his interview with the Public Defender's investigator on Friday, September 17, 1976, Boyd was incarcerated. On the day of the interview, he was given Form 5A which he completed and returned. The form was received by the Public Defender on Tuesday, September 21, 1976. The Public Defender then had one business day to investigate Boyd's indigency, accept him as a client, interview him again about the crimes charged, investigate the validity of the search and seizure issue, and prepare and file a motion to suppress. There is no question but that Boyd himself acted promptly. The question is whether the Public Defender could have been expected to complete its necessary actions in one day, especially when it obviously did not believe it was necessary to file for an extension of time. Otherwise, as the district court found, it would have formulated an institutional response to this procedure and filed for an extension. Thus, we must conclude that the unwritten, local policy which required formal applications for extensions of time

and which the district court found not to have been firmly entrenched, prevented Boyd from availing himself of the state procedures. It cannot be said that Boyd intentionally or inadvertently waived or by-passed the state procedures, *e. g., Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Caver v. Alabama,* 577 F.2d 1188 (5th Cir. 1978); *Johnson v. Meacham,* 570 F.2d 918 (10th Cir. 1978); *Gates v. Henderson,* 568 F.2d 830 (2d Cir. 1977), (in banc), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978), or that state courts rejected his claim after some meaningful inquiry. *E. g., Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Rather, a breakdown in the process occurred which prevented him from even presenting his fourth amendment claim. His motion to suppress was dismissed, and thus was not considered on the merits, because it was not accompanied by a formal application for extension. Thus, he was prevented from even explaining the reasons for the delay in filing the motion to suppress. Because of the unusual combination of circumstances, especially the unwritten policy on extensions and the informal repudiation of the prior practices on extensions, Boyd was denied the opportunity to present his fourth amendment claim. We hold that federal habeas corpus relief is therefore not precluded and that he should at a minimum be given the opportunity to have his day in court on the legality of the search and seizure.

### III.

Accordingly, the judgment of the district court will be vacated and the case remanded to it with the direction that if the state court does not permit Boyd to assert his fourth amendment claim within a reasonable period of time, the district court should hold its own evidentiary hearing to decide Boyd's fourth amendment claim.