William JENKINS, Plaintiff,

v.

John J. RAFFERTY, Warden and Irwin I. Kimmelman, Attorney General of the State of New Jersey, Defendants.

Civ. A. No. 83–4085.

United States District Court, D. New Jersey.

Oct. 23, 1984.

William Jenkins, pro se.

George L. Schneider, Prosecutor of Essex County by Josephine R. Potuto, Asst. Essex County Prosecutor, Newark, N.J., for defendants.

## OPINION

DEBEVOISE, District Judge.

Petitioner, an inmate of the New Jersey State Prison of Rahway, was convicted on March 18, 1977 of murder, commission of murder while armed, robbery and commission of robbery while armed. He seeks issuance of a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241, et seq.

Petitioner alleges that he was arrested at his home after a warrantless, nonconsensual entry. Thereafter he gave a confession which was used against him at trial. Prior to trial he had moved to suppress evidence found in an automobile which had been seized immediately after the arrest. As part of his attempt to demonstrate the unlawfulness of the search of the automobile, petitioner's attorney questioned the police claim that they had a warrant for petitioner's arrest. Under then prevailing New Jersey law a warrant was not required to make an arrest on probable cause in a private home. After petitioner had appealed his conviction and had lost in the Appellate Division of the New Jersey Superior Court and in the New Jersey Supreme Court, but before the time to petition the United States Supreme Court for certiorari had expired, the United States Supreme Court decided the case of *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). *Payton* held that the Fourth Amendment prohibits the police from making a warrantless and nonconsensual entry into a suspect's home to make a routine felony arrest. Instead of petitioning the United States Supreme Court for certiorari petitioner sought post conviction relief in the New Jersey trial court. Relief was denied on the grounds that the Supreme Court would not apply *Payton* retroactively. Thereafter the United States Supreme Court ruled that *Payton* was to be applied retroactively to all convictions that were not yet final at the time the decision

was rendered. *United States v. Johnson* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982).

This case raises the troublesome questions (i) whether petitioner's conviction should be considered "final" within the meaning of *Johnson* and (ii) if not, whether the State has provided petitioner an opportunity for full and fair litigation of his claim within the meaning of *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) so as to preclude further review in a habeas corpus proceeding.

## THE FACTS

On September 27, 1976, three men robbed the Newark Tobacco and Candy Company. During the course of the robbery, the store's manager was shot and killed. The police, after ascertaining that petitioner's car was used for the getaway, learned of his residence on September 28, and arrested him on September 29, at approximately 6:40 p.m.

At police headquarters, after being read his *Miranda* warnings and signing a waiver of *Miranda* rights, petitioner was interrogated for a period of time. He then met privately with one Denise Goode, to whom he apparently was married, and her child. From 10:30 p.m. on September 29 to 12:44 a.m. on September 30, police detectives took a detailed statement from petitioner in which he admitted participation in the robbery.

## PROCEDURAL HISTORY

On February 28, 1977 petitioner moved to suppress a carton of cigarettes bearing the tax number used exclusively by the robbed store and found by police during a search of the petitioner's car. At the hearing on the motion, the arresting officer, upon questioning by the prosecutor, affirmatively represented that there had been an armed robbery arrest warrant open for petitioner on September 29, 1976, for a previous robbery at a different establishment. (Suppression Hearing transcript at 73). The officer who searched petitioner's car

stated that such warrant existed for the petitioner's arrest. (see Suppression transcript at 14). The arresting officer also testified that he did not have the arrest warrant in his possession at the time of petitioner's arrest. (Suppression Transcript 77). Review of the transcript for the hearing on the motion to suppress reveals that the central issue addressed was whether the cigarette carton found in petitioner's car should be suppressed and that the issue of the warrant's validity was peripheral to the hearing.

In his opinion on the petitioner's motion to suppress the trial court judge stated:

I find that a vehicle described as a 1968 or 1969 four-door brown Cadillac with license plate 512 FTV was observed fleeing the scene of the robbery. I find further that a check of the license plate number revealed that the car was registered to one Willie Jenkins, residing at 65 Mercer Street, for a 1971 red Oldsmobile. I find that there was a warrant issued for the arrest of Willie Jenkins albeit on a different offense than that for which he is presently charged to wit: Armed robbery.

I find that Willie Jenkins was arrested pursuant to said warrant ...

I find that the arrest was a lawful arrest. I find further that the inventorying of the contents of the vehicle was properly made. (Suppression Hearing transcript at 14–142).

At trial, petitioner did not challenge the validity of his arrest and specifically did not claim that a valid arrest warrant had not existed. At no time at or before trial did he object to the admission at trial of his confession as being the fruit of an illegal arrest. According to petitioner's memorandum of law submitted with his petition, petitioner states that his trial counsel advised that it would be fruitless to raise any further legal arguments related to the arrest, because the trial judge had already ruled that the arrest was legal at the suppression hearing. (Plaintiff's memorandum of law in support of petition at 25). In view of the law of New Jersey at that time

concerning the need for an arrest warrant, the question of the existence of a warrant was of minor significance.

Petitioner appealed his conviction to the Appellate Division of Superior Court. On that appeal petitioner argued for the first time that his arrest was illegal because there was no valid warrant and that therefore his confession, given while in unconstitutional custody, should have been suppressed. Basing his arguments on testimony given by police officials to the grand jury which handed down the indictment against him and on police reports, petitioner argued on appeal that as of the time of his arrest on September 29, the police did not yet have information linking him to the prior offense on which the warrant was alleged to be based.

Assuming his arrest was illegal, petitioner went on to contend that the taint of the illegal arrest had not been purged by the time he made his confession. Petitioner further alleges that in their private meeting Ms. Goode informed him that police officers had threatened that unless petitioner confessed they were going to arrest her for receiving stolen property and put her child in a shelter.

The Appellate Division affirmed the judgment of conviction on November 19, 1979. The court noted that generally a claim that evidence obtained in violation of the Fourth Amendment was improperly admitted at trial will not be considered when presented for the first time on appeal. The court found no extraordinary circumstances suggesting that the claim should be entertained since it found petitioner's claim that no valid warrant existed to be mere "speculation".

The court went on to say in dicta that the police had probable cause to make a warrantless arrest of petitioner and that the New Jersey courts do not require a warrant to make an arrest on probable cause in a private residence. Finally, the court concluded that the confession was voluntary and that the "arrest had but minimal impact upon" the petitioner.

Petitioner then filed a petition for certification to the Supreme Court of New Jersey. Certification was denied on March 17, 1980.

In a letter dated March 25, 1980, the Public Defender's Office of New Jersey informed petitioner that the Supreme Court of New Jersey had denied the petition for certification. The letter also advised petitioner that further review was possible by filing a petition for a writ of certiorari to the United States Supreme Court. The letter stated that such a petition had to be filed within ninety days of the date of the State Supreme Court's order. The Public Defender's Office advised that, alternatively the petitioner could file a pro se petition for habeas corpus relief with the Clerk of the United States District Court in Newark. The letter counseled that in light of the time limitation for filing a petition for certiorari, it would be advisable to pursue the certiorari petition before pursuing the habeas corpus petition.

On April 15, 1980, the United Supreme Court decided *Payton v. New York, supra.* At the time of the Supreme Court's decision, petitioner could still have petitioned the United States Supreme Court for a writ of certiorari or re-petitioned the New Jersey Supreme Court for certification on the basis of *Payton.*

Instead, on May 23, 1980, petitioner filed a petition for post-conviction relief in the Law Division of Superior Court. In support of his petition petitioner relied on *Payton.* At the conclusion of a hearing on October 17, 1980 the petition was denied. The decision was, as stated by the judge, based primarily on the limited scope of review in petitions for post-conviction relief and the fact that petitioner had not challenged the validity of his arrest at trial. As a secondary reason, the court stated that *Payton* was not retroactively applicable to petitioner's case.

The determination of the Law Division was affirmed by the Appellate Division on May 20, 1982 on the ground that *Payton* need not to be given retroactive effect. Perhaps unaware that on June 21, 1982 the

United States Supreme Court had decided *United States v. Johnson, supra,* the New Jersey Supreme Court denied petitioner's petition for certification on July 14, 1982. This petition for a writ of habeas corpus ensued.

## EXHAUSTION OF STATE REMEDIES

■ Before a district court may entertain an application for a writ of habeas corpus, the petitioner must have exhausted the remedies available for him in the state courts. 28 U.S.C. § 2254(b), (c). Petitioner appealed his conviction to the Appellate Division of the Superior Court and to the New Jersey Supreme Court. Petitioner filed a petition for post conviction relief and appealed the decision in these proceedings to the Appellate Division and the State Supreme Court. Petitioner has thus exhausted his state remedies and his petition for habeas corpus relief is now ripe for adjudication.

## THE MERITS

Respondent urges that the trial court found that there was a valid warrant for petitioner's arrest at the time he was arrested. Respondent further urges that under the holding of *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) this finding cannot be challenged in a habeas corpus proceeding.

Petitioner on the other hand, asserts that misrepresentations made by police officers misled the trial and appellate courts with respect to the validity of the arrest warrant and that as a result of such misrepresentations he was not provided with an opportunity for a full and fair litigation of his Fourth Amendment right guaranteed him under *Powell.* Although respondent's two briefs do not confront petitioner's assertions concerning police misrepresentations, I have examined the record to determine whether there is evidence to support his contentions.

At the February 28, 1977, hearing regarding the suppression of a cigarette carton found in petitioner's car, police officers

affirmatively represented that at the time of petitioner's arrest on September 29, there had been a warrant open for petitioner's arrest for another crime, an armed robbery of the People's Tavern in Newark, which allegedly had occurred on September 1, 1976. The existence of such a warrant would have made legal the otherwise warrantless arrest of petitioner on the homicide charge. The basis of petitioner's misrepresentation charge is that the police had no evidence linking petitioner to the People's Tavern robbery until after his arrest, and that therefore petitioner was arrested without a valid warrant. Specifically, petitioner contends that it was not until September 30, the day after his arrest, that the police obtained two pieces of evidence linking him with the Tavern robbery: 1) a statement of one of his alleged criminal partners, Julius Morris, that he had held up the tavern with petitioner and a third man and 2) a tentative photo identification of petitioner by Willie Tucker an eye-witness of the tavern robbery.

Testifying before a Grand Jury with respect to petitioner's indictment, Detective George McDonald stated that he signed a complaint on September 27, 1976, charging Willie Jenkins, William Moore, and Julius Williams with the armed robbery of People's Tavern. (Grand Jury Transcript at 2). Despite this initial statement, McDonald's subsequent testimony raised the question of whether there was a valid warrant at the time of the arrest. Specifically, his testimony raised a question as to when the petitioner's name was placed on the warrant.

McDonald testified that an eye witness to the Tavern robbery, Willie Tucker, assisted the Newark police in their investigation. According to McDonald, Tucker thought he recognized the robbers but was unable initially to identify possible suspects from the police photograph file (Grand Jury Transcript at 3). Further investigation of the robbery turned up the names of Julius Morris and "Waffle" as suspects[1] (Id.) McDonald testified that he "had warrants made out for these two fellows [Julius Morris and a second suspect, William Moore] and a John Doe." [2] (Grand Jury Transcript at 3-4). McDonald's continuation report confirms his Grand Jury testimony that Petitioner's arrest warrant initially did not contain his name. (See Det. McDonald Police "Continuation Report"). McDonald then testified that on either September 29 or 30 Tucker made a positive photo identification of Morris and Moore and a tentative identification of petitioner as one of the three men who robbed the tavern (Grand Jury Transcript at 4).

Detective McDonald also testified before the Grand Jury that on the afternoon of September 30, 1976, Julius Morris, then in police custody, stated that he, Willie Jenkins, and William Moore had held up the People's Tavern. (Grand Jury Transcript at 7; Continuation Report at 1-2).

McDonald did not testify nor did the Continuation Report state at what time or on what date the name on the arrest warrant was changed from "Richard Roe" to Willie Jenkins. But certainly, the testimony and other evidence that Tucker made his identification of Jenkins on the 29th or 30th and that Morris identified Jenkins on the 30th clearly raised the possibility that the police

---

1. The suspects in the People's Tavern robbery apparently used several aliases: According to McDonald's Grand Jury testimony Julius Williams was also known as Julius Morris; William Moore was also known as "Waffle" and Alfred Moore.

2. The warrant to which Jenkins' name was eventually added was actually a "Richard Roe" warrant. Fed.R.Crim P. 4(c)(1) as amended provides that a warrant "shall contain the name of the defendant or, if his name is unknown, any name or description by which he can be described with reasonable certainty." N.J.Ct. Rule 3:3-2 as amended contains similar language. "John Doe" warrants fail to honor the principles in the Fourth Amendment and Fed.R. Crim P. 4. Even assuming that the officer swearing out a "John Doe" warrant has demonstrated probable cause to arrest someone, the warrant, by its terms, will allow the executing officer to make his own inference in effecting the arrest. For these reasons, "John Doe" warrants have been held illegal. *United States v. Doe.*, 703 F.2d 745, 747 (3rd Cir.1983).

had nothing linking Jenkins to the tavern robbery at the time of this arrest on the 29th.

Thus there are factual issues whether a valid arrest warrant existed at the time of petitioner's arrest and whether the police officers misled the trial court at the suppression hearing. An evidentiary hearing would be required to decide these questions, and for present purposes I assume that there was not a valid arrest warrant and that the police officers were at least in error when they testified that such a warrant existed.

Two other grounds which respondent urges for dismissal of the petition also involve factual inquiries which would have to be decided at an evidentiary hearing, namely, (i) that notwithstanding the unlawful arrest, there was insufficient nexus between the arrest and the confession to require suppression of the confession and (ii) exigent circumstances rendered petitioners arrest valid even if made without a warrant.

Turning to two questions which can be decided on the record before me, I conclude that *Payton* is retroactively applicable here, but that the principles of *Stone v. Powell* preclude petitioner from relitigating his Fourth Amendment claim in this proceeding.

Applying *United States v. Johnson, supra,* literally, petitioner's conviction was not final at the time the decision in *Payton* was rendered. Although the New Jersey Supreme Court had denied his petition for certification, he still had the option to petition the United States Supreme Court for certiorari or to re-petition the New Jersey Supreme Court.

Respondent urges that petitioner, not having sought direct relief in either the United States or New Jersey Supreme Court, has forfeited his right to claim the retroactive effect of *Payton:* "at this stage, however, petitioner no longer is on direct appeal; his conviction is final. Thus, *United States v. Johnson,* making *Payton* retroactive to nonfinal judgements, does

not apply". (Respondent's answer to Petition at p.1). The Court in *Johnson* recognized that even under its retroactivity approach "it may be unvoidable that some similarly situated defendants will be treated differently", *id,* 457 U.S. at 556–57, fn. 17, 102 S.Ct. at 2590–91, fn. 17. However, I do not believe that this is a reason to disturb the language of *Johnson.* *Payton* applied because petitioner's conviction was not yet final at the time the decision [in *Payton* ] was rendered." *id,* 457 U.S. at 562, 102 S.Ct. at 2593.

Nevertheless, the question whether petitioner can raise his *Payton* claim is controlled by the nature of the proceedings in which he seeks to raise it. There is no question that he could have raised this issue in a petition for certiorari to the United States Supreme Court. It must be determined whether he can raise it here in a habeas corpus proceeding.

No challenge can be made that petitioner's confession was involuntary or that it was inadmissable because of a *Miranda* violation. *Miranda v. Arizona* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The only ground for its exclusion is that it followed an arrest which, in violation of the Fourth Amendment, was effected without a warrant. Thus the case is governed by *Stone v. Powell, supra,* which holds that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted habeas corpus relief on the ground that evidence obtained on an unconstitutional search or seizure was introduced at his trial". 428 U.S. at 482. The reasoning behind *Stone* is that application of the exclusionary rule deflects from the truthfinding process, often freeing the guilty, and while deterrence of official misconduct supports implementation of the exclusionary rule at trial, "the additional contribution, if any, of the consideration of search- and seizure claims of state prisoners on collateral review is small in relation to the costs" 428 U.S. at 493.

■ To satisfy the opportunity for the full and fair litigation requirement of *Stone* actual litigation of the Fourth Amendment claim is not required. Rather, *Stone* only requires that the state provide an opportunity to litigate regardless of whether the defendant actually takes advantage of it. *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir.1978); *Gates v. Henderson*, 568 F.2d 830 (2d Cir.1977), (en banc), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978). *See also Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir.1980).

■ It must be decided whether the State provided petitioner with an opportunity for full and fair litigation of his Fourth Amendment claim. Viewing the State proceedings both prior to trial and after trial, I conclude that petitioner was provided with this opportunity.

At the time of the suppression hearing New Jersey law permitted an arrest in a suspect's home without a warrant if probable cause existed. Since *Payton* had not been decided there was no reason for petitioner's attorney to challenge the arrest on constitutional grounds. Nevertheless petitioner's attorney did raise the question of the existence of a valid warrant and examined the police witness on that subject. He did this as a part of his efforts to suppress evidence found in petitioner's automobile. The judge hearing the motion found on the basis of the evidence that a valid warrant existed.

On appeal and post conviction relief proceedings petitioner challenged the truthfulness of the testimony given at the suppression hearing and produced evidence which suggested that at the time of petitioner's arrest, the warrant was in "John Doe" form and did not name petitioner.

In the post conviction relief hearing the trial court heard petitioner's factual and legal contention based on *Payton*, which by then had been decided. The trial court ruled against petitioner on retroactivity grounds which later proved to be an erroneous prediction of the United States Supreme Court's position on retroactivity. Nevertheless it cannot be said that the New Jersey Courts failed to provide petitioner with a full and fair opportunity to litigate his Fourth Amendment claim.

■ In considering a petition for habeas corpus, "the question is not whether the trial court 'correctly' decided the Fourth Amendment issue, but whether the petitioner was given an opportunity for full and fair state court litigation of his Fourth Amendment claim". *United States ex rel. Petillo v. State of New Jersey*, 562 F.2d 903, 906 (3d Cir.1977). In *Petillo*, the Court of Appeals reversed the district court's overturning of a state trial judge's credibility determination. The Court held that state court credibility findings should not be disturbed unless they are "inherently incredible." Id. at 907. By analogy, the inability of the court hearing the post conviction relief application to predict the manner in which the United States Supreme Court would apply *Payton* does not render the proceeding less than full and fair. Troubling as it may be, the New Jersey Supreme Court's apparent unawareness of the then recently issued opinion in *United States v. Johnson, supra*, when it denied certification does not render the proceedings less than full or unfair.

Thus I conclude that under *Stone v. Powell, supra*, petitioner may not raise his Fourth Amendment claim in a habeas corpus proceeding.

The petition will be dismissed without an evidentiary hearing. However, in view of the unusual circumstances of the case I shall certify probable cause for purposes of an appeal. I shall enter an appropriate order.