IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-660

No. COA20-712

Filed 7 December 2021

Cabarrus County, No. 19 CRS 052709

STATE OF NORTH CAROLINA

v.

DANIEL RAYMOND JONAS, Defendant.

Appeal by Defendant from judgment entered 3 March 2020 by Judge Martin B. McGee in Cabarrus County Superior Court. Heard in the Court of Appeals 21 September 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Jessica Macari, for the State.*

*Sigler Law, PLLC, by Kerri L. Sigler, for defendant-appellant.*

MURPHY, Judge.

When a defendant pleads guilty but does not plead guilty pursuant to a plea arrangement with the State, he is not required to give the State notice of his intent to appeal before plea negotiations are finalized to pursue his statutory right to appeal a final order denying a motion to suppress pursuant to N.C.G.S. § 15A-979(b). We have jurisdiction to hear the merits of Defendant's appeal of his *Motion to Suppress.*

A traffic stop made without reasonable articulable suspicion is

unconstitutional as it violates the Fourth Amendment. Evidence illegally obtained as a result of an unconstitutional traffic stop must be suppressed. Reviewing the totality of the circumstances, law enforcement did not have reasonable articulable suspicion to stop Defendant and, as such, the traffic stop was unconstitutional. The trial court erred by denying Defendant's *Motion to Suppress*.

## **BACKGROUND**

¶ 3          On 28 June 2019, around 10:00 p.m., Officer Andrew Berry of the Concord Police Department was on routine patrol of Highway 49 South when he noticed a vehicle with three occupants pull out ahead of him from a trucking company parking lot. Due to the empty parking lot, the fact the gate was closed, and that there was only one light on in the parking lot, Officer Berry believed the business was closed, which "kind of raised [his] suspicion on why the vehicle [was] pulling out of there." Officer Berry followed the vehicle and, when he was close enough behind it, he noticed the vehicle displayed a transporter plate, which he had "never seen . . . on a car." Officer Berry ran the plate through his computer system, and the plate came back as "not assigned to [a] vehicle."

¶ 4          Defendant Daniel Raymond Jonas was a passenger in the vehicle as well as its registered owner. "[B]ased on the fact that the vehicle was displaying [what Officer Berry believed to be] a fictitious tag, and [he was] attempting to determine what tag was supposed to be on the vehicle[,]" Officer Berry initiated a traffic stop. During the

stop, the Concord Police Department canine unit arrived and conducted an open-air sniff around the vehicle. Law enforcement located 0.1 grams of methamphetamine in a backpack in the trunk of the vehicle.

¶ 5 Defendant was subsequently indicted for possession of a Schedule II controlled substance. Prior to trial, Defendant filed a *Motion to Suppress*, requesting any evidence seized in connection with Officer Berry's traffic stop on 28 June 2019 be suppressed as fruit of the poisonous tree because Officer Berry lacked a reasonable articulable suspicion to stop the vehicle. After a hearing on the motion, the trial court entered an order denying Defendant's *Motion to Suppress* ("Order"), which contained the following findings of fact:

> 1. [Defendant] is charged with [p]ossession of a Schedule II [c]ontrolled [s]ubstance as a result of an interaction he had with Officer Andrew Berry of the Concord Police Department on [28 June 2019] in Concord, North Carolina.
>
> 2. That on [28 June 2019], at approximately 10:00 PM, Officer Berry was on duty within his jurisdiction driving on NC Highway 49 when a vehicle displaying a transporter registration plate pulled onto Highway 49 in front of him from [] a trucking company. Officer Berry believed the business was closed because the business's office was dark and there were no other vehicles in the office parking lot.
>
> 3. Even though [Defendant's] vehicle did not have a trailer attached to it, Officer Berry was aware of a recent trailer theft in the area.
>
> 4. Officer Berry ran the transporter registration plate and the plate came back as not assigned to a vehicle.

> 5. Officer Berry initiated a traffic stop on the vehicle.
>
> 6. The [trial court] is considering [] Defendant's motion to suppress filed on [31 October 2019].

The Order contained the following relevant conclusions of law:

> 3. The vehicle was exiting from a closed business with no lights visible to the [roadway].[1]
>
> 4. [N.C.G.S. §] 20-79.2 provides: "The Division of Motor Vehicles may issue a transporter plate authorizing the limited operation of a motor vehicle in the circumstances listed in this subsection. A person who received a transporter plate must have proof of financial responsibility that meets the requirements of Article 9A of this Chapter." The statute goes on to list ten (10) limited circumstances in which a person to whom a transporter plate and the vehicle bearing the plate may be operated.
>
> 5. The officer had reasonable articulable suspicion to stop the vehicle in question to ensure its compliance with N.C.G.S. § 20-79.2.

¶ 6 Following the denial of the *Motion to Suppress*, Defendant pled guilty[2] to possession of a Schedule II controlled substance and received a suspended sentence of 6 to 17 months. After the trial court announced its judgment, through counsel,

---

[1] We note Conclusion of Law 3 is more properly characterized as a finding of fact. *See In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (citations and marks omitted) ("[A]ny determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law. Any determination reached through logical reasoning from the evidentiary facts is more properly classified a finding of fact."). However, this distinction is not relevant to our analysis.

[2] Defendant did not plead guilty pursuant to a plea arrangement with the State. *See* Part A, *infra* at ¶ 9.

Defendant orally gave notice of appeal of the Order. In open court, following the trial court's acceptance of his guilty plea, counsel stated: "Your Honor, [Defendant] would enter notice of appeal. I filed written notice[3] with regard to the motion to suppress. I just wanted to put it on the record now, and I'll be filing a notice." Defendant has also filed a petition for writ of certiorari with this Court, "should [we] find that trial counsel failed to give proper notice of appeal following the denial of [Defendant's] suppression motion as required by *State v. Reynolds*, 298 N.C. 380, 397, 259 S.E.2d 843, 853 (1979)[.]" This matter was calendared before us on 21 September 2021; however, on 22 September 2021, we invited the parties to file supplemental briefs addressing

> whether our Supreme Court's holding in State v. Reynolds-'when a defendant intends to appeal from a suppression motion denial pursuant to N.C.G.S. [§] 15A-979(b), he must give notice of his intention to the prosecutor and the trial court before plea negotiations are finalized or he will waive the appeal of right provisions of the statute'-applies in a situation where, as here, Defendant's plea of guilty is not 'part of a plea arrangement.' State v. Reynolds, 298 N.C. 380, 397, 259 S.E.2d 843, 853 (1979), cert. denied, 446 U.S. 941, 64 L. Ed. 2d 795 (1980)[.]

We further cited to *State v. Tew*, 326 N.C. 732, 734-35, 392 S.E.2d 603, 604-05 (1990);

*State v. McBride*, 120 N.C. App. 623, 625, 463 S.E.2d 403, 404 (1995), *aff'd per curiam*,

---

[3] A written notice of appeal does not appear anywhere in the Record on appeal.

344 N.C. 623, 476 S.E.2d 106 (1996); Form AOC-CR-300 paragraph 20 (Rev. 5/18); Record page 17 at paragraph 20; and page 7 lines 4-10 of the plea transcript.

## ANALYSIS

### A. Appellate Jurisdiction

¶ 7 "In North Carolina, a defendant's right to pursue an appeal from a criminal conviction is a creation of state statute." *McBride*, 120 N.C. App. at 624, 463 S.E.2d at 404. Generally, a defendant who pleads guilty does not have a right to appeal. *See* N.C.G.S. § 15A-1444(e) (2019). However, N.C.G.S. § 15A-979(b) provides an exception for defendants appealing a final order denying a motion to suppress. *See* N.C.G.S. § 15A-979(b) (2019) (emphasis added) ("An order finally denying a motion to suppress evidence may be reviewed upon an appeal from a judgment of conviction, *including a judgment entered upon a plea of guilty*.").

¶ 8 In *Reynolds*, our Supreme Court interpreted this exception and held that "when a defendant intends to appeal from a suppression motion denial pursuant to [N.C.G.S. §] 15A-979(b), he must give notice of his intention to the prosecutor and the [trial] court *before plea negotiations are finalized* or he will waive the appeal of right provisions of the statute." *Reynolds*, 298 N.C. at 397, 259 S.E.2d at 853 (emphasis added). Our Supreme Court reasoned:

> We do not believe that [N.C.G.S. § 15A-979(b)] . . . contemplates a factual pattern . . . which would cause the State to be trapped into agreeing to a plea bargain . . . and

then have the defendant contest that bargain.

As stated by the United States Supreme Court, "Once the defendant chooses to bypass the orderly procedure for litigating his constitutional claims in order to take the benefits, if any, of a plea of guilty, the State acquires a legitimate expectation of finality in the conviction thereby obtained."

The plea bargaining table does not encircle a high stakes poker game. It is the nearest thing to arm's length bargaining the criminal justice system confronts. As such, it is entirely inappropriate for either side to keep secret any attempt to appeal the conviction.

*Id.* (quoting *Lefkowitz v. Newsome*, 420 U.S. 283, 289, 43 L. Ed. 2d 196, 202 (1975)).

¶ 9 The State argues Defendant did not comply with the *Reynolds* notice requirement because his "intent to appeal came after the entry of the plea" and "notice of the intention to appeal is required before the conclusion of plea negotiations." (Emphasis omitted). However, Defendant did not agree to plead guilty as part of a plea arrangement, as indicated on the *Transcript of Plea*, reproduced below:

20. Have you agreed to plead  ☑ guilty  ☐ guilty pursuant to *Alford*  ☐ no contest  as part of a plea  (20) _No_
arrangement? *(if so, review the terms of the plea arrangement as listed in No. 21 below with the defendant.)*

21. The prosecutor, your lawyer and you have informed the Court that these are all the terms and conditions of your plea:

| PLEA ARRANGEMENT | |
|---|---|
| | |

☐ The State dismisses the charge(s) set out on Page Two, Side Two, of this transcript.
☐ The defendant stipulates to restitution to the party(ies) in the amounts set out on "Restitution Worksheet, Notice And Order (Initial Sentencing)" (AOC-CR-611).

22. Is the plea arrangement as set forth within this transcript and as I have just described it to you correct as being your full plea arrangement?  (22) _N/A_

23. Do you now personally accept this arrangement?  (23) _N/A_

24. *(Other than the plea arrangement between you and the prosecutor)* has anyone promised you anything or threatened you in any way to cause you to enter this plea against your wishes?  (24) _No_

Defendant also testified during his plea colloquy that he did not plead guilty pursuant to a plea arrangement with the State:

> THE COURT: Have you agreed to plead guilty as part of a plea arrangement?
>
> [DEFENDANT]: Yes, sir.  Oh. No, sir.
>
> THE COURT: No.  There's not one listed here.

As Defendant did not plead guilty pursuant to a plea arrangement with the State, he was not required to comply with the *Reynolds* notice requirement in order to invoke his statutory right to appeal.

The concerns that were present in *Reynolds* are not present here.  Defendant

neither received nor accepted the benefits of a plea offer from the State. The State was not "trapped into agreeing to a plea bargain" only to later "have [] [D]efendant contest that bargain." *Id.* Defendant was not required to give the State and the trial court notice of his intent to appeal before plea negotiations were finalized because there were no plea negotiations. Defendant has a statutory right to appeal the Order pursuant to N.C.G.S. § 15A-979(b), and we dismiss his petition for writ of certiorari as moot.

## B. Motion to Suppress

¶ 11      Having established that this Court has proper appellate jurisdiction, we turn to the merits of Defendant's appeal. Defendant's sole argument on appeal is that the trial court erred by denying his *Motion to Suppress* because Officer Berry did not have a reasonable articulable suspicion to conduct the traffic stop.

¶ 12      Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial [court's] underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the [trial court's] ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal." *State v. Miller*, 243 N.C. App. 660, 663, 777 S.E.2d 337, 340 (2015). "While the trial court's factual findings

are binding [on appeal] if sustained by the evidence, the [trial] court's conclusions based thereon are reviewable *de novo* on appeal." *State v. Parker*, 137 N.C. App. 590, 594, 530 S.E.2d 297, 300 (2000).

¶ 13        Defendant does not challenge any of the Order's findings of facts, and they are deemed to be supported by competent evidence and binding on appeal. *See Miller*, 243 N.C. App. at 663, 777 S.E.2d at 340. Rather, Defendant challenges Conclusion of Law 5, and argues "the trial court erred by denying [his] motion to suppress because there was no reasonable articulable suspicion for the traffic stop." Conclusion of Law 5 states:

> The officer had reasonable articulable suspicion to stop the vehicle in question to ensure its compliance with N.C.G.S. § 20-79.2.

¶ 14        The Fourth Amendment of the United States Constitution protects individuals "against unreasonable searches and seizures[.]" U.S. Const. amend. IV. The North Carolina Constitution provides the same protection. N.C. Const. art. I, § 20; *State v. Elder*, 368 N.C. 70, 73, 773 S.E.2d 51, 53 (2015) ("Though Article I, Section 20 of the North Carolina Constitution contains different language, it provides the same protection against unreasonable searches and seizures [as the Fourth Amendment]."). A traffic stop is a seizure "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653, 59 L. Ed. 2d 660, 667 (1979). Consistent with the Fourth Amendment, "an officer

may . . . conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123, 145 L. Ed. 2d 570, 576 (2000); *see also State v. McClendon*, 350 N.C. 630, 636, 517 S.E.2d 128, 132 (1999).

¶ 15        "Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *State v. Barnard*, 362 N.C. 244, 247, 658 S.E.2d 643, 645 (marks omitted), *cert. denied*, 555 U.S. 914, 172 L. Ed. 2d 198 (2008).

> [Our Supreme Court] has determined that the reasonable suspicion standard requires that the stop be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. Moreover, a court must consider the totality of the circumstances–the whole picture in determining whether a reasonable suspicion exists.

*Id*. (citation and marks omitted).

¶ 16        During the *Motion to Suppress* hearing, Officer Berry testified to the following:

> [DEFENSE COUNSEL:] Can you tell us about what led up to you encountering [Defendant].
>
> [OFFICER BERRY:] . . . . I noticed a car pull out in front of me coming from a parking lot to the left. . . . .
>
> And [as] soon as I saw him pull out, I remember looking to the left, and I know that's the [trucking company] building which I knew it was late. There's -- I mean, there's no cars.

I know the office hours are closed, and it's a trucking company. So that kind of raised my suspicion on why the vehicle is pulling out of there. . . . .

And then I got behind [the vehicle]. I actually had to slow down a little bit and my lights were on the tag, so I was able to type it in on NCIC. But before I typed it in, I noticed, I've never seen a plate like that on a car. I mean, I had seen it on trucks. It was TP-664 and so on, like 66462. And when I ran it, it came back to plates not assigned to vehicle.

[DEFENSE COUNSEL:] And what does the TP mean in the TP66462?

[OFFICER BERRY:] At the time I was not -- I didn't know if TP meant anything special or -- but I just -- my thought, theory through it was just came from a trucking company, I've seen those on trucks. I mean, it just raised my suspicion for it to be pulling out of there and the tag to be on that vehicle.

[DEFENSE COUNSEL:] And you said the tags came back unassigned?

[OFFICER BERRY:] Correct, yes, sir.

[DEFENSE COUNSEL:] Meaning that it was not assigned, the tag was not assigned to a particular vehicle?

[OFFICER BERRY:] Correct.

[DEFENSE COUNSEL:] The tag was not invalid?

[OFFICER BERRY:] It came back on my computer, and if it comes back not assigned, I'm under the impression it's not valid, it's . . .

[DEFENSE COUNSEL:] You're under the impression that it's not valid?

[OFFICER BERRY:] Well, I'm saying like what I'm looking at on my computer is what it's telling; do you know what I'm saying?

[DEFENSE COUNSEL:] So does your computer tell you that it was an invalid tag?

[OFFICER BERRY:] No, no, sir, no. It just said, plates not assigned to vehicle. I'm sorry, maybe I misunderstood.

[DEFENSE COUNSEL:] And so the tag was not canceled?

[OFFICER BERRY:] It just said, plates not assigned to vehicle. That's the only thing it told me. It didn't say canceled, revoked, or anything of that, no, sir.

[DEFENSE COUNSEL:] Okay, it didn't say revoked?

[OFFICER BERRY:] No. The transport plate did not, no, sir.

[DEFENSE COUNSEL:] And your computer would normally tell you if a tag is cancelled or --

[OFFICER BERRY:] Correct, if that tag was, yes, sir, correct.

[DEFENSE COUNSEL:] It wasn't expired?

[OFFICER BERRY:] No, sir, not the plate, no. . . . .

[DEFENSE COUNSEL:] The tag wasn't altered in any way?

[OFFICER BERRY:] No, sir.

[DEFENSE COUNSEL:] The tag didn't show suspended?

[OFFICER BERRY:] No, sir.

[DEFENSE COUNSEL:] And it wasn't canceled?

[OFFICER BERRY:] No. Just plates not assigned to [a] vehicle.

. . . .

[DEFENSE COUNSEL:] And it was a valid North Carolina plate?

[OFFICER BERRY:] Like I said, sir, I've seen those tags on trucks. I've never seen them on a car, that's why it brought my attention to it. When I ran it, it just came back plates not assigned to vehicle.

. . . .

[DEFENSE COUNSEL:] And so, because the tag came back unassigned, you stopped the vehicle?

[OFFICER BERRY:] No, sir. It was included in my reasonable suspicion.

[DEFENSE COUNSEL:] Well, what else was included in your reasonable suspicion?

[OFFICER BERRY:] Well, when [the vehicle] pulled out of the closed business, like I said, [the vehicle] pulled out in front of me, and I noticed that I've seen those [transporter] tags on trucks before and [the vehicle] just pulled out of a trucking company, a business that I know to be closed at that time, okay. And we've had -- actually, it was exactly a month ago there was a stolen trailer on [Highway] 49.[4] I mean, I'm just including all of this into the fact that I thought that plate should not have been on that vehicle. Closed business.

---

[4] As Defendant does not challenge the trial court's determination in Finding of Fact 3 that the theft was "recent," we do not address any issue related to the validity of such a characterization.

¶ 17        This testimony demonstrates Officer Berry's purported reasonable articulable suspicion of criminal activity was based on, *inter alia*, the fact that Officer Berry had never seen a transporter plate on a motor vehicle other than a truck before and believed transporter plates could not be used on regular motor vehicles.

¶ 18        A transporter plate may be issued under the following circumstances:

> The Division may issue a transporter plate authorizing the limited operation of a motor vehicle in the circumstances listed in this subsection.  A person who receives a transporter plate must have proof of financial responsibility that meets the requirements of Article 9A of this Chapter.  The person to whom a transporter plate may be issued and the circumstances in which the vehicle bearing the plate may be operated are as follows:
>
> (1) To a business or a dealer to facilitate the manufacture, construction, rebuilding, or delivery of new or used truck cabs or bodies between manufacturer, dealer, seller, or purchaser.
>
> (2) To a financial institution that has a recorded lien on a motor vehicle to repossess the motor vehicle.
>
> (3) To a dealer or repair facility to pick up and deliver a motor vehicle that is to be repaired, is to undergo a safety or emissions inspection, or is to otherwise be prepared for sale by a dealer, to road-test the vehicle, if it is repaired or inspected within a 20-mile radius of the place where it is repaired or inspected, and to deliver the vehicle to the dealer.  A repair facility may not receive more than two transporter plates for this purpose.
>
> (4) To a business that has at least 10 registered vehicles to move a motor vehicle that is owned by the business and is a replaced vehicle offered for sale.

(5) To a dealer or a business that contracts with a dealer and has a business privilege license to take a motor vehicle either to or from a motor vehicle auction where the vehicle will be or was offered for sale. The title to the vehicle, a bill of sale, or written authorization from the dealer or auction must be inside the vehicle when the vehicle is operated with a transporter plate.

(6) To a business or dealer to road-test a repaired truck whose GVWR is at least 15,000 pounds when the test is performed within a 10-mile radius of the place where the truck was repaired and the truck is owned by a person who has a fleet of at least five trucks whose GVWRs are at least 15,000 pounds and who maintains the place where the truck was repaired.

(7) To a business or dealer to move a mobile office, a mobile classroom, or a mobile or manufactured home, or to transport a newly manufactured travel trailer, fifth-wheel trailer, or camping trailer between a manufacturer and a dealer. Any transporter plate used under this subdivision may not be used on the power unit.

(8) To a business to drive a motor vehicle that is registered in this State and is at least 35 years old to and from a parade or another public event and to drive the motor vehicle in that event. A person who owns one of these motor vehicles is considered to be in the business of collecting those vehicles.

(9) To a dealer to drive a motor vehicle that is part of the inventory of a dealer to and from a motor vehicle trade show or exhibition or to, during, and from a parade in which the motor vehicle is used.

(10) To drive special mobile equipment in any of the following circumstances:

a. From the manufacturer of the equipment to a facility of a dealer.

> b. From one facility of a dealer to another facility of a dealer.
>
> c. From a dealer to the person who buys the equipment from the dealer.

N.C.G.S. § 20-79.2(a) (2019). Contrary to Officer Berry's belief at the time of the traffic stop, the plain language of the statute indicates that transporter plates can be used on both trucks and motor vehicles. *See id.* We must decide whether Officer Berry's genuine, but mistaken, belief that transporter plates could not be displayed on motor vehicles was reasonable and thus could be considered part of his reasonable articulable suspicion for the traffic stop.

¶ 19      In *Heien v. North Carolina*, the United States Supreme Court distinguished between reasonable and unreasonable mistakes of law: "The Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes–whether of fact or of law– must be *objectively* reasonable. We do not examine the subjective understanding of the particular officer involved." *Heien v. North Carolina*, 574 U.S. 54, 66, 190 L. Ed. 2d 475, 486 (2014). In *State v. Eldridge*, we had the opportunity to apply *Heien*. *See State v. Eldridge*, 249 N.C. App. 493, 497-500, 790 S.E.2d 740, 743-44 (2016). We held that "in order for an officer's mistake of law while enforcing a statute to be objectively reasonable, the statute at issue must be ambiguous." *Id.* at 499, 740 S.E.2d at 743.

¶ 20        The text of N.C.G.S. § 20-79.2(a) is clear and unambiguous.  Transporter plates can be displayed on both cars and trucks, as the statute uses the phrase "motor vehicle" in the general sense.  N.C.G.S. § 20-79.2(a) (2019).  The requirements of the statute clearly apply to both cars and trucks and does not calculate into our reasonable suspicion analysis of this traffic stop merely because the transporter plate was displayed on a car.

¶ 21        The additional facts that the trucking company was closed and there was a recent trailer theft in the area are insufficient to support reasonable articulable suspicion, even when considered in totality.  While similar factors have historically been cited in the totality of the circumstances analysis to help support establishment of reasonable articulable suspicion, they are insufficient in this context given the lack of other circumstances in this case.  *See Wardlow*, 528 U.S. at 124, 145 L. Ed. 2d at 576 (marks omitted) (noting the United States Supreme Court has "previously noted the fact that the stop occurred in a high crime area among the relevant contextual considerations" in a reasonable suspicion analysis, and holding "it was not merely [the] respondent's presence in [a high crime area] that aroused the officers' suspicion, but his unprovoked flight upon noticing the police"); *State v. Fields*, 195 N.C. App. 740, 744, 673 S.E.2d 765, 768 (emphasis added) ("When determining if reasonable suspicion exists under the totality of the circumstances, a police officer may also evaluate factors such as *traveling at an unusual hour . . . .*"), *disc. rev. denied*, 363

N.C. 376, 679 S.E.2d 390 (2009); *State v. Watkins*, 337 N.C. 437, 442-43, 446 S.E.2d 67, 70-71 (1994) (citing the business where the defendant's vehicle was located being closed as one factor to support reasonable articulable suspicion, in addition to the fact it was 3:00 a.m. and there was an anonymous tip that "a suspicious vehicle" was at the location). The totality of the circumstances indicates the vehicle was exiting the parking lot of a closed building where there were no other cars present, in an area where there was a recent trailer theft. These circumstances are insufficient to support the reasonable articulable suspicion necessary to allow a lawful traffic stop. *See State v. Horton*, 264 N.C. App. 711, 716, 723, 826 S.E.2d 770, 774, 779 (2019) (holding the fact that a defendant was in front of a closed building where there were no other cars present in an area where a business across the street experienced prior break-ins was insufficient to support an officer's reasonable articulable suspicion).

¶ 22        The Order states that Defendant's vehicle displayed a transporter registration plate that came back as not assigned to any vehicle; the trucking company appeared to be closed as the office was dark and there were no other vehicles in the parking lot; and Officer Berry was aware of a recent trailer theft in the area. However, the trial court made no findings as to what activity by Defendant warranted Officer Berry's suspicion. These circumstances, taken in their totality, were insufficient to support a reasonable articulable suspicion necessary to allow a lawful traffic stop. When coupled with the fact that the vehicle did not commit any traffic violations prior to

getting stopped, there exists insufficient findings that Defendant was committing, or about to commit, criminal activity. *See Wardlow*, 528 U.S. at 123, 145 L. Ed. 2d at 576 (emphasis added) ("[A]n officer may . . . conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that *criminal activity is afoot*."). We hold the totality of the circumstances provided Officer Berry with nothing more than an "inchoate and unparticularized suspicion or hunch."[5] *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989) (marks omitted).

¶ 23 As Officer Berry's mistake of law was not objectively reasonable under the standard set out in *Heien* and *Eldridge*, no reasonable articulable suspicion existed to support the stop of Defendant's vehicle. Accordingly, the trial court erred in denying Defendant's *Motion to Suppress*. We reverse the trial court's order denying the *Motion to Suppress* and remand to the trial court for entry of an order vacating Defendant's guilty plea. *See State v. Cottrell*, 234 N.C. App. 736, 752, 760 S.E.2d 274, 285 (2014) ("Because [the] defendant's consent to search his car was the product of an unconstitutional seizure, the trial court erred in denying [the] defendant's motion

---

[5] We further note the trial court's fifth conclusion, to the extent it suggests Officer Berry could stop the vehicle to ascertain whether there was a statutory violation or not, is not compatible with our Fourth Amendment jurisprudence. Our caselaw establishes that an officer may stop a vehicle when there is a reasonable articulable suspicion that criminal activity, such as violating a statute, has occurred or is about to occur. The officer could not initiate a traffic stop without any reasonable articulable suspicion "to ensure its compliance" with a statute.

to suppress. Accordingly, we reverse and remand to the trial court for entry of an order vacating [the] defendant's guilty pleas.").

## **CONCLUSION**

We have jurisdiction to hear the merits of Defendant's appeal of his *Motion to Suppress*. Officer Berry's mistake of law was not objectively reasonable because N.C.G.S. § 20-79.2 is unambiguous. The traffic stop was unconstitutional, and all evidence seized from the traffic stop must be suppressed. We reverse the Order and remand to the trial court for entry of an order vacating Defendant's guilty plea.

REVERSED AND REMANDED.

Judges INMAN and HAMPSON concur.